RODNEY GREEN *v.* THE STATE.

1. CRIMINAL LAW. *Murder. Penalty, how fixed.*
    Section 2 of an act approved March 4, 1875, provides "that in all cases where any person, upon conviction of crime, shall or may be punished with death, the jury may, in their discretion, in their verdict declare that the penalty or punishment shall be imprisonment in the penitentiary for life; but if the jury shall omit to so declare the penalty in their verdict, then the court shall pro-nounce the death penalty." The only effect of this statute is to authorize the juries in cases of murder to fix, as the penalty of guilt, imprisonment for life in the penitentiary. And where the jury agree as to a verdict of guilty of murder, but not as to the penalty of imprisonment in the penitentiary for life, they should return a general verdict of guilty, and the court should affix the penalty of death by hanging, as prescribed by law.

2. SAME. *Evidence. Credibility of accomplice. Instruction thereon.*
In a case of homicide, where the evidence may warrant the belief that an important witness for the state was an accomplice in the crime charged, it is error in the court to refuse to instruct the jury, on behalf of the defendant, that "the testimony of an accomplice in crime should be received with great caution, and the jury may disbelieve such testimony altogether." It is the right of the accused, in such a case, to have the jury informed of the distrust with which the law regards the testimony of an accomplice, and it is no reason for refusing an instruction upon this point that the jury have already been instructed that they are the sole judges of the evidence, and may wholly disregard the testimony of such witnesses, in general, as they do not believe.

ERROR to the Circuit Court of Pike County.

Hon. J. M. SMILEY, Judge.

The plaintiff in error was tried upon an indictment for murder, and the jury returned a general verdict of guilty. The third instruction given for the state was as follows:

"If the jury, from the evidence, should find the defendant guilty, and such should be their verdict, then they may, if they think proper, adjudge the penalty to be imprisonment for life in the penitentiary. But if they, while concurring in and agreeing to a verdict of guilty, cannot agree as to adjudging the penalty to be imprisonment for life, then they should return a general verdict of guilty as charged in the indictment."

The court refused the first instruction asked by the accused, to the effect that "the testimony of an accomplice in crime should be received with the utmost caution, and the jury may wholly disbelieve such testimony altogether." The accused excepted to the giving and refusal, respectively, of the above instructions.

*S. E. Packwood*, for the plaintiff in error.

1. The 2d section of an act of 1875 provides "that in all cases where any person or persons, upon conviction of crime, shall or may be punished with death, the jury may, in their discretion, in their verdict declare that the penalty or punishment shall be imprisonment in the penitentiary for life; but if the jury shall omit to so declare the penalty in their verdict, then the court shall pronounce the death penalty."

The purpose of this statute was to submit the whole matter to the jury, as to affixing the penalty in a case of murder. But the law, as propounded by the third instruction for the state, makes a disagreement as to the penalty compel the jury, in effect, to affix the death penalty, and takes away from the jury all discretion in the matter, at least when there is a disagreement. The province of the jury as to their verdict is entire, and they should agree both as to the guilt or innocence of the accused, and as to the penalty, if he is guilty.

2. The court erred in refusing the instruction asked for the accused, in relation to the testimony of an accomplice. " Without doubt, great caution in weighing such testimony is dictated by prudence and good reason." 1 Greenl. on Ev., sec. 380.

*T. C. Catchings*, Attorney-General, for the State.

1. The statute of 1875 did not establish different degrees of murder, and affix to each a corresponding penalty; if it did, then of course the jury would all have to agree as to the degree of the offense. The only change made was to allow the jury, in their discretion, to declare that the punishment for murder should be imprisonment for life, instead of death. The punishment fixed by law is death; the jury may, by their verdict, commute the death penalty; if they do not, the accused must suffer the penalty fixed by law. Their failure to commute the punishment leaves no discretion in the court; it must then pronounce the death penalty.

2. The instruction asked by the accused in reference to the testimony of an accomplice was wholly inapplicable, as the record does not show that any accomplice in the killing testified, or even that there was any accomplice. It is argued that Irvin, who testified for the state, was an accomplice, but the only evidence of it was the fact that he had been jointly indicted with the defendant, although a *nolle prosequi* was entered as to him. But, even if his testimony had been excluded, there would be enough left to justify the verdict. But the instruction was properly refused for another reason: While the testi-

mony of an accomplice should be received with caution, yet, if corroborated, it may be, and frequently is, of the most satisfactory kind. The jury may disbelieve the testimony of any witness, whether an accomplice or not; so, in the abstract, there was no reason for limiting the language of the instruction to an accomplice, and to have given it thus would have misled the jury.

Per CURIAM. The third instruction for the state is correct. The act of 1875 (Acts 1875, p. 79) made no change in the law of homicide except to authorize the jury, in their verdict, to declare that the penalty for murder should be imprisonment in the penitentiary for life. Ex parte *Fortenberry*, 53 Miss. 428. One guilty of murder is to be punished with death by hanging, unless the jury, in their verdict, shall declare the different punishment mentioned in the act cited. If the jury should agree in the verdict of guilty of murder, but not agree as to declaring the penalty of imprisonment in the penitentiary for life, the verdict of guilty should be rendered, and the penalty fixed by law for murder should follow, because of such guilt and the inability of the jury to agree on a different punishment. The failure of the jury to agree on affixing the punishment should not prevent the rendition of a verdict of guilty concurred in by all.

We think the court erred in refusing to charge the jury, at the instance of the accused, that "the testimony of an accomplice in crime should be received with the utmost caution, and the jury may wholly disbelieve such testimony altogether."

It is true that the jury had already been told that they were the sole judges of the testimony, and that they might wholly disbelieve such witnesses as they thought proper; but the distrust with which the law itself regards the testimony of an accomplice is wholly different from that right which the jury have to view with suspicion, or wholly reject, the evidence of ordinary witnesses. It was the right of the accused to demand that the jury should be informed of this distrust entertained

by the law of this class of witnesses, and it was error to refuse so to inform them.

It is said that there was no evidence to show that there was any accomplice. One of the principal witnesses for the state was jointly indicted with the accused, a *nolle prosequi* was entered as to him in the presence of the jury, and he was then placed upon the witness-stand. The instruction refused would have been more accurately drawn if it had left it to the jury to say whether they believed him to be an accomplice; but in view of the facts above stated, and of the testimony tending to criminate him, we think the safer rule would have been to have given the instruction asked, especially so, in view of the gravity of the crime charged, and of the fact that it depended almost wholly on circumstantial testimony.

For this error the judgment is reversed and a new trial awarded.