## H. A. FLEMING *v.* THE STATE.

1. CRIMINAL LAW. *Practice in Supreme Court. Sect. 1433, Code 1880, construed.*

    Sect. 1433 of the Code of 1880 has the effect to establish the presumption, in every criminal case before the Supreme Court subject to its operation, that the judgment of the court below is correct, unless the appellant can show by the transcript of the record in his case that he made complaint in the court below of the very matter for which he here assigns error. *Spivey* v. *The State,* 58 Miss. 743, approved.

2. SAME. *Practice in Supreme Court. Errors not complained of in court below. Case in judgment.*

F. was indicted in the county of Y. for murder, in the killing of G. On the application of accused, the venue was changed to C. County. A transcript of the proceedings in the case in Y. County was duly certified by the clerk of the Circuit Court of that county, and forwarded to, and filed in, the office of the circuit clerk of C. County, where a trial was had which resulted in the conviction of F. He was sentenced to be hung, and appealed to this court. The transcript of the record in this court does not show a proper organization of the Circuit Court of C. County, where the trial was had, or where it was held, or what judge presided, or whether any judge was present. But from the whole record and the clerk's certificate, it appears that the trial and conviction were had in C. County. The errors assigned in this court have respect to the grand jury, which found the indictment, the organization of the court in the county where the trial and conviction were had, and similar matters, but they were not made grounds of special exception in the court below. *Held*, that under sect. 1433 of the Code of 1880 the errors assigned cannot be availed of here because not complained of in the court below.

3. SAME. *Instruction. Reasonable doubt. Supreme Court practice.*
Though the instruction of the court, in the trial of a charge for murder, in attempting to define and make clear to the understanding of the jury the idea of that indefinable thing, a reasonable doubt, may be a failure, yet this court will not predicate a reversal upon such failure to perform the impossible, where it cannot be said that any wrong was done the accused.

4. SAME. *Absence of bill of exceptions. Instruction. Supreme Court practice.*
This court will not pass upon instructions asked by the appellant and refused by the court below, where there is no bill of exceptions in the record setting out the evidence, as this court cannot know whether the evidence made them proper or not.

5. SAME. *Instruction. Punishment for murder. Verdict.*
On a trial for murder, an instruction in these words is correct: "If the jury find the defendant guilty as charged, and cannot agree upon the punishment, the jury must not for that reason disagree, but they should return a verdict of guilty as charged." *Green* v. *The State*, 55 Miss. 454, approved.

APPEAL from the Circuit Court of Calhoun County.

Hon. J. W. C. WATSON, Judge.

H. A. Fleming was indicted in Yalobusha County for murder, in the killing of Edward Gardner. On the application of the defendant a change of venue was granted to Calhoun County. A trial in the Circuit Court of the latter county resulted in his conviction. He was sentenced by that court to be hung, and from that judgment he appealed to this court. A motion was made for a new trial. The motion was overruled and no exception was taken to the order overruling

motion. No exceptions whatever were taken to any of the rulings of the court below, and no bill of exceptions appears in the transcript of the record.

Seventeen errors are assigned here, having respect to the grand jury which found the indictment, the organization of the court in Calhoun County, where the trial and conviction were had, the order overruling the motion for a new trial, and the instructions given for the State, and those refused for the defendant.

The third instruction given for the State was as follows: "Though it be true that great care and caution should be used in weighing circumstantial evidence, yet the same is true of every other kind of evidence, since all human testimony may be false, and we should, therefore, use caution in forming our opinions and deliberations in adopting conclusions. Yet we should not carry our doubts too far, because we should thereby be rendered unfit for the practical duties of life."

The seventh instruction for the State was as follows: "While it is true that the guilt of the prisoner must be shown beyond a reasonable doubt, yet this reasonable doubt is not vague conjecture or supposition, but is a doubt of which reason may be given, and this doubt may fairly arise out of the evidence and not be merely fancied or conjured up. A jury must not raise a mere fanciful or imaginary doubt to escape the consequences of an unpleasant verdict. It must be an honest doubt, such a doubt as fairly strikes a conscientious mind and clouds the judgment. Mathematical or demonstrative certainty is not required. All that is required to justify conviction is, after a comparison and consideration of the whole testimony, to believe conscientiously that it establishes the guilt of the defendant."

The ninth instruction for the State was as follows: "No man, in the sworn investigation of a criminal charge, is at liberty to disbelieve, as a juror, that of which his reason is convinced as a man. Therefore, if such person, as an honest, unprejudiced, man has no doubt from the evidence as to the

prisoner's guilt, then, as a juror, he can have no reasonable doubt of such guilt, and he should not attempt to draw any mere fanciful distinction between his belief as an honest man, and his belief as a juror. The eleventh and last instruction for the State was as follows: "If the jury find the defendant guilty as charged and cannot agree upon the punishment, the jury must not for that reason disagree, but they should return a verdict of guilty as charged."

*Calhoon & Green*, for the appellant, by appointment of the court.

1. This record, by any fair construction, shows that it was made a point by the Board of Supervisors, and by the court, that only householders should constitute the grand jury. Now, while it is no objection to a grand juror that he is a householder, that capacity is not essential to his selection, and it is a dangerous usurpation of power, in those having authority, to make it such. Moreover, it is an usurpation violative of the rights of suspected or accused persons, and might be made an engine of vast oppression to them.

2. It is fatal to this record that it does not show the organization of any court, the presence of any judge, or sheriff, on the very important occasion when Fleming's right to live was being inquired about. When we leave the Yalobusha court, we become wanderers on the face of the earth. We are not advised where Mr. Fleming was tried or who tried him.

3. The third instruction, given at the instance of the State, is much too broad in telling the jury not to carry their doubts too far. If they have any doubt they cannot carry it too far.

4. The seventh instruction tells the jury that a doubt, to warrant acquittal, must be such a doubt as "clouds the judgment," and further, that it must "arise out of the evidence." We submit that the doubt should not "cloud the judgment."

5. The ninth instruction for the State is clearly wrong. It is not necessary that a doubt should arise out of the evidence

adduced, but such doubt may very well arise out of the want of any evidence.

6.  We ask a reconsideration of the case of *Green* v. *The State*, 55 Miss. — .    The law formerly had degrees of murder.    This produced difficulties and complications, and frequent reversals on technical grounds, to obviate which, the Legislature abolished them.    Nevertheless, there are degrees in murder, in fact.    Some murders are much more revolting to the  common sensibilities of mankind than others.    Some homicides, which are murders in law, to the common mind are as mild as manslaughter. It followed that juries made the degrees where the law was silent,    and    frequent    acquittals    were    the    natural    result. To obviate this, the Legislature gave the juries the power to fix the punishment at imprisonment  for life, thus recognizing a fact of distinction in grades, which they did not care to announce by re-enactment of the old law.    Is it not a forced construction to say it was the legislative design that one of twelve men might take life against the conviction and protest of the other eleven?    If there was no punishment affixed by law to the crime — if it had merely said " the jury shall determine the punishment of murder, *provided* they must punish either by death or imprisonment for life," it is fair to presume that the decision in Green's case would never have been delivered.    We submit that, practically, the Legislature has done this.    If the jury fix on death, they need only say "guilty."    If on imprisonment, they must say so. The effect of the last instruction of the court was to say to the jury that if eleven of you agree to imprisonment and one alone is for death, the eleven must say death also, against their convictions of the moral grade of the crime.    With great deference we urge that this is severe law and might be departed from without shocking reason.

*S. S. Calhoon*, of counsel for the appellant, argued the case orally.

*J. L. Harris*, for the State.

1.  The errors now complained of were not made the ground

of special exception below, and will not be considered by this court.  Code 1880, sect. 1433.  *Spivey's Case*, 58 Miss. 743. This is a remedial statute and should be liberally construed.

2.  It cannot be said that the instructions now objected to are erroneous, the evidence adduced on the trial not being embodied in a bill of exceptions.  The last instruction is clearly right.  *Green* v. *The State*, 55 Miss. 454.  The re-enactment of this statute after that opinion may be considered a legislative sanction of it.

*J. L. Harris*, also made an oral argument.

CAMPBELL, C. J., delivered the opinion of the court.

The record shows an indictment for murder duly returned into court by a competent grand jury, and "filed," as required by law, and that the venue was changed to Calhoun County on the application of the prisoner, and a transcript of the proceedings in the case in Yalobusha County, where the indictment was found, was duly certified, and transmitted by the clerk of the court in Yalobusha, and was received, and filed in the office of the clerk of the Circuit Court of Calhoun County, where the trial was had and the judgment rendered which is now complained of.  It is true that the record does not show a proper organization of the court in Calhoun County, or where it was held, or what judge presided, or whether any judge was present; but looking through the whole record, and the clerk's certificate thereto, we discover that the trial and conviction were had in the Circuit Court of Calhoun County, where the case stood for trial by virtue of the change of venue ordered on the application of the prisoner, and that the errors now complained of were not made a ground of special exception in the court below, and all of the errors assigned having respect to the grand jury, and the organization of the court, and the like, are unavailing here because of sect. 1433 of the Code of 1880, which had the just effect to create the presumption here on appeal that all things were rightly done in the trial and conviction of the appellant, who

must show that he made complaint specially in the court below of the very matter of which he would take advantage in this court, else it shall not avail him. *Spivey* v. *The State*, 58 Miss. 743. In the case cited it was said, speaking of the statute cited, that the law is founded in the reasonable presumption that the trial '' court will do all things right or that the person sought to be tried, condemned and punished will make every available objection to the proceeding against him, and make a memorial of such objection for use in this court in its review of the proceedings; and, if the accused finds nothing to object to in the progress of the case in the Circuit Court, and the record here does not show that he made objection in that court, this court must assume that nothing occurred below to which he could object, and the judgment of the Circuit Court must stand.'' It was further said in that case, if the transcript filed here '' shows a trial, and verdict and judgment in the court below, and nothing more, the presumption established by the statute that the judgment is correct must prevail, and it will be affirmed.''

We approve the doctrine announced in that case, and adhere to it. We thereby effectuate the object of the statute, which was to close the door against the general jail delivery resulting from the former doctrine that the record must show affirmatively everything necessary to a valid trial, failing in which the judgment was set aside, many times to the defeat of justice and scandal to the administration of the laws against crimes. This statute introduced a new era and established the reign of common sense in the administration of the criminal law in this court. It impinges on no principle of justice, and in no degree violates any right of the accused. It simply says, you shall not overturn, on appeal, the conviction had in the Circuit Court except for something to which you made objection there. It is a most wholesome statute, remedial of a great evil, and we will construe it liberally to accomplish the very proper purpose in its enactment.

We have discovered nothing in the instructions given for

the State to condemn them. It is true of this case as of all others in which it was ever attempted, that the effort to define and make clear to the understanding the idea of that undefinable thing a reasonable doubt, was a failure, and well calculated to darken counsel; but it is impossible to say that wrong was done the prisoner by this effort to perform the impossible.

We cannot say that the instructions asked by the prisoner and refused were erroneously refused, for we do not know whether the evidence made them proper or not. For all that appears, the evidence may have made proper the giving of the instructions asked by the State and the refusal of those refused to the prisoner.

The last instruction for the State is in accord with the decision of this court in *Green* v. *The State*, 55 Miss. 454. Urged by counsel, we have reconsidered the question, and fully approve the rule announced in that case. It is the only practical rule, and besides is the true one on principle, as we think. The re-enactment of the statute interpreted in that case, with that interpretation of it, may be justly regarded as a legislative sanction of it. Nor is there anything severe and cruel in it. The punishment of murder fixed by law is death. He who is found guilty of murder should suffer death, unless the jury affix the other punishment allowed. If they agree that the accused is guilty, they should not fail of a verdict because of their inability to agree on the punishment they may affix. If agreed on guilt a verdict should be rendered at all events, so that the penalty affixed by law to such guilt may be suffered, and a verdict should not be defeated because of want of unanimity among the jurors as to a particular punishment. The ascertainment of guilt is one thing; the consequence of it is another. The prescribed legal consequence of guilt of murder should follow, unless the jury agree on a different punishment, which it may affix. It would be unfortunate for one about whose guilt there is no dispute to escape the penalty prescribed by law for his crime because of

disagreement as to the penalty he should suffer. The law regards the penalty it has prescribed as the proper one, and deems it no wrong to insist on its infliction except where the body to whom it is committed concurs in a different result.

Affirmed.