# WINSTON *v.* UNITED STATES.

# STRATHER *v.* UNITED STATES.

# SMITH *v.* UNITED STATES.

CERTIORARI TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

*Nos.* 431, 432, 433. Argued November 28, 1898. — Decided January 3, 1899.

Under the act of Congress of January 15, 1897, c. 29, § 1, by which "in all cases where the accused is found guilty of the crime of murder," "the jury may qualify their verdict by adding thereto 'without capital punishment,' and whenever the jury shall return a verdict qualified as aforesaid the person convicted shall be sentenced to imprisonment at hard labor for life," the authority of the jury to decide that the accused shall not be punished capitally is not limited to cases in which the court, or the jury, is of opinion that there are palliating or mitigating circum-

stances; but it extends to every case in which, upon a view of the whole evidence, the jury is of opinion that it would not be just or wise to impose capital punishment.

THESE were three cases of indictments, returned and tried in the Supreme Court of the District of Columbia, for murders committed since the passage of the act of Congress of January 15, 1897, c. 29, by the first section of which, "in all cases where the accused is found guilty of the crime of murder or of rape under sections fifty-three hundred and thirty-nine or fifty-three hundred and forty-five, Revised Statutes, the jury may qualify their verdict by adding thereto 'without capital punishment;' and whenever the jury shall return a verdict qualified as aforesaid the person convicted shall be sentenced to imprisonment at hard labor for life." 29 Stat. 487.

Winston was indicted for the murder of his wife by shooting her with a pistol on December 13, 1897. At the trial, the government introduced testimony that while the defendant and his wife were together in their bedroom about noon, with the door fastened, a pistol shot was heard, followed by a loud cry from her, and by two or three other pistol shots; that, on breaking open the door, the wife was found lying on the bed, killed by a pistol ball in the brain, and the defendant lying near her, unconscious, badly wounded by a pistol ball in the side of the head, and with a pistol near his hand; that earlier in the day he had taken a pistol from a place where he had left it; that he had previously threatened to kill her; and that he afterwards confessed that he had killed her, and said that he had shot her because he was jealous of her and another man, and wanted to shoot both her and her lover, and that he afterwards shot himself. The defendant, being called as a witness in his own behalf, testified that he and his wife lived happily together, except that she was jealous of him; that he did not shoot her, and never said that he had shot her; that she shot him, and he immediately became unconscious, and so remained for a week after.

The judge instructed the jury that if they believed from the evidence that the woman took her own life, or that the

defendant did not fire the fatal shot, their verdict must be not guilty; but that if they were satisfied beyond a reasonable doubt that she met her death from a pistol ball fired from a pistol held in the hand of the defendant, and that her death was caused by him, their verdict should be "guilty as indicted," "for there would be a presumption of malice arising from the fact that her death was accomplished by the firing of a pistol ball by the defendant from a pistol held in his hand; and as there is no evidence that has been adduced which tends to show any palliating or mitigating circumstances, there could be but one reasonable inference from the fact of the shooting, and that would be that the act was committed with malice aforethought."

The judge further instructed the jury as follows: "You have been told, and it is the law since the act of Congress, passed in January, 1897, that a jury is authorized, when they shall have reached the conclusion that a defendant on trial is guilty of murder, to qualify their verdict by adding thereto the words 'without capital punishment.'

"Counsel has endeavored to impress upon the jury the fact not only that this right exists, but that it is the duty of the jury to so qualify their verdict in every given case; that because they have the opportunity of extending mercy, therefore the duty follows the right; that because it is your privilege or opportunity to qualify the verdict by adding the words 'without capital punishment,' it is your duty so to do. But the law was not so intended. It was intended to serve some useful purpose. There are many shades of circumstances that make up the crime of murder in different cases. In some instances, the circumstances might be such as to bring the crime within the definition of murder, and yet those circumstances might not indicate that degree of wantonness, wilfulness and heinousness that the circumstances in other cases would indicate. I think that it was intended by Congress that in cases where the crime is clearly murder within the definition of the crime of murder, and yet there are circumstances which tend to mitigate the offence, palliating circumstances that tend to show that the crime is not heinous in its

character, the jury may add the words 'without capital punishment,' and the law then makes the penalty imprisonment for life.

"That qualification cannot be added unless it be the unanimous conclusion of the twelve men constituting the jury. I think that it should not be added unless it be in cases that commend themselves to the good judgment of the jury, cases that have palliating circumstances which would seem to justify and require it.

"The penalty for the crime of murder has not been abrogated by Congress. The law-making power has seen fit to allow that penalty to remain; and it is only in those cases where the circumstances indicate to the jury that propriety, and the necessity, perhaps, or the duty of making such qualification, that the jury should add the qualifying words 'without capital punishment.' In all other cases the law speaks. The jury need not qualify the penalty. It is not their duty to qualify it. It is their right and privilege in a proper case to qualify it."

"If the defendant did not commit this crime, he should be returned by your verdict not guilty. If he did commit the crime, then he is responsible for these conditions, not you. Your simple duty is to declare whether he is guilty or not guilty. If guilty, then your verdict should be either guilty as indicted, or guilty with the qualification."

Strather was indicted for the murder with a hatchet on October 15, 1897, of a woman with whom he lived as his wife, but who was the wife of another man. At the trial, the government introduced evidence tending to prove these facts, and that for several nights before the homicide she failed to join the defendant, and he threatened to kill her. The testimony of the defendant and of other witnesses called by him tended to prove the defendant's previous reputation as a peaceful and law-abiding citizen, and the deceased's previous reputation as a quarrelsome and violent woman; that she had on previous occasions assaulted him, on one occasion throwing at him a beer mug, and on another occasion cutting him with a

penknife; that she had previously threatened his life, and he knew of the threat; that immediately before the homicide, there had been a quarrel between them; and that upon his arrest, immediately after the homicide, there was a bleeding wound upon his face. The defendant, in his testimony, admitted that he inflicted upon the woman the wounds which caused her death; but denied that he had ever threatened her life; and affirmed that he inflicted those wounds while under fear of his life, and during the heat and excitement of the quarrel, and while suffering pain from a blow by her on his left jaw, where there was an ulcerated sore at the time he received the blow.

At the close of the evidence, the defendant requested the judge to give certain instructions to the jury, including this one: "In case the jury find the prisoner guilty of murder, they are instructed that they may qualify their verdict by the words 'without capital punishment,' no matter what the evidence may be." The judge declined to give that instruction, and, after defining murder and manslaughter, and the right of self-defence, instructed the jury as follows:

" If you should reach the conclusion that your verdict should be 'guilty as indicted,' it is your right, under a recent act of Congress, passed in January, 1897, to add to this verdict 'without capital punishment.' The jury have this power in any given case. The court cannot control your act at all. The court can only advise you as to the law. The responsibility is entirely with you, and you can render such verdict as you please. I mean that you have the power to do it. You can render a verdict of not guilty in a case where the evidence clearly shows guilt. Of course, such action on the part of the jury would be a direct violation of their oaths. If the jury believed a man was guilty, and simply out of pity or sympathy or mercy rendered a verdict of not guilty, they would violate their oaths.

" I have no doubt that this act of Congress was intended to serve some useful purpose. The penalty of murder has not been disturbed by this act of Congress; it is fixed by law; the jury neither make nor unmake it. Doubtless the intention

of the legislature was this : that if, in a case in which the jury reach the conclusion that the party on trial is guilty for murder, circumstances are shown by the evidence that are of a palliating nature, they may give the defendant the benefit of those palliating circumstances, and say in their verdict 'without capital punishment.' If, however, the jury believe that there are no palliating circumstances, it is their duty not to add anything, but to leave the penalty as it stands. It may be that a provision of this kind in the law was intended to apply to a case somewhat like that suggested by the district attorney. Suppose a man knowing that his wife had been in improper relations with another man, and roused to anger by such knowledge, but postponing from time to time, while he meets this man, the execution of his vengeance upon him, he finally concludes to and does kill him, that would be murder, a clear case of murder under the law ; but those circumstances might be such as would convince the jury that the extreme penalty of the law ought not to be inflicted. There may be other cases. I simply give that as an illustration. But the object of this penalty, gentlemen of the jury, is to protect society ; and the jury should not interfere with it under any circumstances, unless the circumstances are such as to satisfy them that this provision should be added to the verdict.

"If you reach the conclusion of guilt, 'guilty as indicted,' it is your duty to return that verdict; and, unless you unanimously agree that the verdict should be qualified as the statute provides you may qualify it, there can be no qualification. It must be the unanimous conclusion of the jury. The question for you to ask yourselves is this : Are the circumstances in this case such, if you reach the conclusion that the defendant is guilty as indicted, as to require you, upon your oaths, to interfere with the penalty fixed by law?"

Smith was indicted for the murder with a hatchet on November 15, 1897, of the wife of another man. At the trial, the government introduced circumstantial evidence tending to support the indictment; and also evidence that the defendant hired a room in the dwelling-house of the husband and wife ;

that, some time before the homicide, the two men had a quarrel about her, and both were arrested, convicted and imprisoned on charges of assault; that the defendant at one time threatened to kill her if she ever resumed living with her husband ; and that the defendant was quarrelling with her just before her death.

The judge instructed the jury as follows : " Under a recent statute the jury are authorized, in returning a verdict of guilty of murder, if the evidence justifies them on their consciences in so doing, to qualify the verdict by the addition of the words ' without capital punishment.'

" The law inflicting the penalty of death for murder has not been repealed.  That is the penalty which the law fixes."  " The legislature probably intended that in cases where there were some mitigating or palliating circumstances, where it was apparent from the evidence that the crime was not the most heinous crime of murder, or where there was doubt whether the circumstances indicated premeditation, perhaps, that the jury might qualify their verdict by adding the words ' without capital punishment.'  But it was evidently contemplated by Congress that there would be cases in which juries would not be justified in so qualifying their verdicts, and therefore the law remains, and unless the verdict is so qualified the penalty of the law is unchanged."

" If you find that the defendant is guilty, you will vindicate the law and uphold it by returning a verdict of ' guilty as indicted.'  Whether you qualify it or not is a matter for you to determine.  If you conclude to qualify it, it must be by the unanimous decision of the twelve jurors." ·

In each case, the defendant excepted to the instructions of the court concerning the act of Congress of January 15, 1897 ; and, after verdict of " guilty as indicted," and sentence of death, appealed to the Court of Appeals of the District of Columbia, which affirmed the judgment, Justice Shepard dissenting.  26 Wash. Law Rep. 469.  Writs of certiorari were thereupon granted by this court under the act of Congress of March 3, 1897, c. 390.  29 Stat. 692 ; 171 U. S. 690.

*Mr. George Kearney* for Winston. *Mr. Charles H. Turner* was on his brief.

*Mr. Samuel D. Truitt* for Strather. *Mr. Tracy L. Jeffords* was on his brief.

*Mr. Henry E. Davis* for the United States. *Mr. Assistant Attorney General Boyd* was on his brief.

*Mr. F. S. Key Smith* for Smith.

Mr. Justice Gray, after stating the cases, delivered the opinion of the court.

By section 5339 of the Revised Statutes, reënacting earlier acts of Congress, "every person who commits murder" "within any fort, arsenal, dockyard, magazine, or in any other place or district of country under the exclusive jurisdiction of the United States," "shall suffer death."

The act of January 15, 1897, c. 29, entitled "An act to reduce the cases in which the penalty of death may be inflicted," provides, in section 1, that in all cases in which the accused is found guilty of the crime of murder under section 5339 of the Revised Statutes "the jury may qualify their verdict by adding thereto 'without capital punishment;' and whenever the jury shall return a verdict qualified as aforesaid the person convicted shall be sentenced to imprisonment at hard labor for life." 29 Stat. 487.

The question presented and argued in each of the three cases now before the court is of the construction and effect of this act of Congress.

The hardship of punishing with death every crime coming within the definition of murder at common law, and the reluctance of jurors to concur in a capital conviction, have induced American legislatures, in modern times, to allow some cases of murder to be punished by imprisonment, instead of by death. That end has been generally attained in one of two ways.

First. In some States and Territories, statutes have been passed establishing degrees of the crime of murder, requiring

the degree of murder to be found by the jury, and providing that the courts shall pass sentence of death in those cases only in which the jury return a verdict of guilty of murder in the first degree, and sentence of imprisonment when the verdict is guilty of murder in the lesser degree. See *Hopt* v. *Utah,* 104 U. S. 631, and 110 U. S. 574; *Davis* v. *Utah,* 151 U. S. 262, 267–269.

For instance, the statutes of the Territory of Utah contained the following provisions : " Every murder perpetrated by poison, lying in wait, or any other kind of wilful, deliberate, malicious and premeditated killing; or committed in the perpetration of, or attempt to perpetrate, any arson, rape, burglary or robbery ; or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any other human being, other than him who is killed; or perpetrated by any act greatly dangerous to the lives of others, and evincing a depraved mind regardless of human life, is murder in the first degree ; and any other homicide, committed under such circumstances as would have constituted murder at common law, is murder in the second degree." " Every person guilty of murder in the first degree shall suffer death, or, upon the recommendation of the jury, may be imprisoned at hard labor in the penitentiary for life, at the discretion of the court; and every person guilty of murder in the second degree shall be imprisoned at hard labor in the penitentiary for not less than five nor more than fifteen years." Compiled Laws of Utah of 1876, §§ 1919, 1920, pp. 585, 586.

In the leading case of *Hopt* v. *Utah,* this court held that evidence that the accused was in a state of voluntary intoxication at the time of the killing, (which would not have been competent in defence of an indictment for murder at common law,) was competent for the consideration of the jury upon the question whether he was in such a condition as to be capable of deliberate premeditation, constituting murder in the first degree under the statute. 104 U. S. 631. Upon a second trial of the same case, the territorial court, in charging the jury, having used this language, " That an atrocious and dastardly murder has been committed by some person is

apparent, but in your deliberations you should be careful not to be influenced by any feeling," the conviction was again reversed by this court, saying that this observation was naturally regarded by the jury as an instruction that the offence, by whomsoever committed, was murder in the first degree; whereas it was for the jury, having been informed as to what was murder, by the laws of Utah, to say whether the facts made a case of murder in the first degree or murder in the second degree. 110 U. S. 582. And in *Calton* v. *Utah*, 130 U. S. 83, a sentence of death upon a conviction of murder in the first degree was reversed, because the judge had not called the attention of the jury to their right, under the statute, to recommend imprisonment for life at hard labor in the penitentiary in place of the punishment of death; and without a recommendation of the jury to that effect the court could impose no other punishment than death. While those decisions have no direct bearing upon the question now in judgment, they are important as illustrating the steadfastness with which the full and free exercise by the jury of powers newly conferred upon them by statute in this matter has been upheld and guarded by this court as against the possible effect of any restriction or omission in the rulings and instructions of the judge presiding at the trial.

Second. The difficulty of laying down exact and satisfactory definitions of degrees in the crime of murder, applicable to all possible circumstances, has led other legislatures to prefer the more simple and flexible rule of conferring upon the jury, in every case of murder, the right of deciding whether it shall be punished by death or by imprisonment. This method has been followed by Congress in the act of 1897.

The act of Congress confers this right upon the jury in broad and unlimited terms, by enacting that "in all cases in which the accused is found guilty of the crime of murder," "the jury may qualify their verdict by adding thereto 'without capital punishment,'" and that "whenever the jury shall return a verdict qualified as aforesaid" the sentence shall be to imprisonment at hard labor for life.

The right to qualify a verdict of guilty, by adding the words

" without capital punishment," is thus conferred upon the jury in all cases of murder.   The act does not itself prescribe, nor authorize the court to prescribe, any rule defining or circumscribing the exercise of this right; but commits the whole matter of its exercise to the judgment and the consciences of the jury.   The authority of the jury to decide that the accused shall not be punished capitally is not limited to cases in which the court, or the jury, is of opinion that there are palliating or mitigating circumstances.   But it extends to every case in which, upon a view of the whole evidence, the jury is of opinion that it would not be just or wise to impose capital punishment.   How far considerations of age, sex, ignorance, illness or intoxication, of human passion or weakness, of sympathy or clemency, or the irrevocableness of an executed sentence of death, or an apprehension that explanatory facts may exist which have not been brought to light, or any other consideration whatever, should be allowed weight in deciding the question whether the accused should or should not be capitally punished, is committed by the act of Congress to the sound discretion of the jury, and of the jury alone.

The decisions in the highest courts of the several States under similar statutes are not entirely harmonious, but the general current of opinion appears to be in accord with our conclusion.  *State* v. *Shields,* 11 La. Ann. 395; *State* v. *Melvin,* 11 La. Ann. 535; *Hill* v. *State,* 72 Georgia, 131; *Cyrus* v. *State,* 102 Georgia, 616; *Walton* v. *State,* 57 Mississippi, 533; *Spain* v. *State,* 59 Mississippi, 19; *People* v. *Bawden,* 90 California, 195; *People* v. *Kamaunu,* 110 California, 609.

The instructions of the judge to the jury, in each of the three cases now before this court, clearly gave the jury to understand that the act of Congress did not intend or authorize the jury to qualify their verdict by the addition of the words " without capital punishment," unless mitigating or palliating circumstances were proved.

This court is of opinion that these instructions were erroneous in matter of law, as undertaking to control the discretionary power vested by Congress in the jury, and as attributing to Congress an intention unwarranted either by the express

words or by the apparent purpose of the statute ; and there-fore in each of these cases

> *Judgment must be reversed, and the case remanded to the Court of Appeals with directions to reverse the judgment of the Supreme Court of the District of Columbia, and to order a new trial.*

MR. JUSTICE BREWER and MR. JUSTICE MCKENNA dissented.