## SMITH v. UNITED STATES.
### No. 6132.

Circuit Court of Appeals, Ninth Circuit.
Feb. 2, 1931.

WILBUR, Circuit Judge, dissenting.

Vanderveer, Beardslee & Bassett, George F. Vanderveer, Will G. Beardslee, and Samuel B. Bassett, all of Seattle, Wash., for appellant.

Anthony Savage, U. S. Atty., and Tom De Wolfe and Cameron Sherwood, Asst. U. S. Attys., all of Seattle, Wash.

Before RUDKIN and WILBUR, Circuit Judges, and NORCROSS, District Judge.

RUDKIN, Circuit Judge.

■ This is an appeal from a judgment of conviction for the crime of rape. It appears from the record that, some time after the submission of the case, the jury returned into court for further instructions as to their duty in fixing the penalty. In response to this request, the court correctly informed them that they, in effect, fixed the punishment, that, if they returned a verdict without the qualifying words, "without capital punishment," the court was bound to sentence the defendant to death, and that, if they qualified their verdict by adding the qualifying words, the court was bound to sentence him to life imprisonment. One of the jurors then inquired what the result would be if they were unable to agree upon the qualifying words, and the court instructed them that, if they agreed upon a verdict of guilty, but could not agree upon the qualifying words, the verdict would stand as guilty without the qualifying words. The jury thereafter returned a verdict of guilty without qualification, and the appellant was sentenced to death. The last-mentioned instruction was apparently given in the absence of counsel for the accused, and was not excepted to before the retirement of the jury; but, in view of the gravity of the case, we think it is our plain duty to review the instruction without an exception and without an assignment of error. Wiborg v. Unit-

ed States, 163 U. S. 632, 659, 16 S. Ct. 1197, 41 L. Ed. 289; Crawford v. United States, 212 U. S. 183, 29 S. Ct. 260, 53 L. Ed. 465, 15 Ann. Cas. 392; Gazzera v. United States (C. C. A.) 7 F.(2d) 467.

The correctness of the instruction complained of depends on the construction of section 330 of the Criminal Code (18 USCA § 567), which provides:

"In all cases where the accused is found guilty of the crime of murder in the first degree, or rape, the jury may qualify their verdict by adding thereto 'without capital punishment'; and whenever the jury shall return a verdict qualified as aforesaid, the person convicted shall be sentenced to imprisonment for life."

The general purpose and effect of the statute was thus declared in Winston v. United States, 172 U. S. 303, 312, 19 S. Ct. 212, 215, 43 L. Ed. 456:

"The right to qualify a verdict of guilty by adding the words 'without capital punishment' is thus conferred upon the jury in all cases of murder. The act does not itself prescribe, nor authorize the court to prescribe, any rule defining or circumscribing the exercise of this right, but commits the whole matter of its exercise to the judgment and the consciences of the jury. The authority of the jury to decide that the accused shall not be punished capitally is not limited to cases in which the court or the jury is of opinion that there are palliating or mitigating circumstances. But it extends to every case in which, upon a view of the whole evidence, the jury is of opinion that it would not be just or wise to impose capital punishment. How far considerations of age, sex, ignorance, illness * * * or clemency, or the irrevocableness of an executed sentence of death, or an apprehension that explanatory facts may exist which have not been brought to light, or any other consideration whatever, should be allowed weight in deciding the question whether the accused should or should not be capitally punished, is committed by the act of congress to the sound discretion of the jury, and of the jury alone."

■■ The question now presented for consideration is this: If in the judgment and consciences of, say, eleven jurors, they are of opinion that it would not be just or wise to impose capital punishment in a given case, must they yield their convictions and submit to an unqualified verdict because one recalcitrant juror insists upon the death penalty? This may appear to be an extreme case, but

such a contingency is neither impossible nor improbable, if the charge of the court below was correct. We cannot believe that such is the law, or that Congress so intended. Unanimity in a verdict, unless otherwise provided by statute, is one of the incidents and essentials of a jury trial. In a criminal case, this unanimity extends to the question of guilt or innocence, to the degree of the crime, where the offense is divided into different degrees, and to the kind or character of punishment, where that question is left to the determination of the jury. The discretion of the jury is unlimited and unrestricted, and if, in the opinion of one or more of the jurors, it would not be just or wise to impose capital punishment, he, or they, are under no legal obligation to join in a verdict without qualification so long as that opinion remains, and an instruction from the court that such is their duty is erroneous, and, of course, prejudicial.

While the above section was first enacted in 1897, an instruction such as the one now under consideration has never been the subject of review in any of the federal courts, so far as we are advised, and the few adjudications to be found in the state courts are conflicting. In Green v. State, 55 Miss. 454, a similar instruction, given under a somewhat similar statute, was upheld by the Supreme Court of that state, and the decision was reaffirmed by the same court in Fleming v. State, 60 Miss. 434. On the other hand, in People v. Hall, 199 Cal. 451, 249 P. 859, it was held by the Supreme Court, in construing a similar statute, that a verdict finding the defendant guilty of murder in the first degree, but disagreeing as to the punishment, would not support a judgment of death. No doubt, language may be found in earlier California decisions contrary to the views there expressed, but in its latest decision the court declared that the question was not involved in the earlier cases and that the language of the court was obiter. A reference to the earlier cases, such as People v. Welch, 49 Cal. 174; People v. French (Cal. Sup.) 7 P. 822, and People v. French, 69 Cal. 169, 10 P. 378, would seem to bear out this criticism; but it is not for us to attempt a reconciliation. Suffice it to say, we are of opinion that the latest expression of the Supreme Court is the sounder and more humane, and, if there be any doubt about the construction of the statute, that doubt should be resolved in favor of life, and not in favor of death. The instruction was therefore erroneous, and for this error the judgment must be reversed.

In view of a retrial, we deem it proper to refer to an assignment based on the admission of testimony. The offense was committed between 9 and 10 o'clock in the morning, and as soon thereafter as she could the prosecuting witness repaired to the home of a neighbor, about 100 yards distant, and complained of the assault. She again complained to her husband about 2:30 in the afternoon, nearly five hours after the assault. The woman to whom complaint was first made was called as a witness by the government, and was asked to state the substance of the complaint made to her, without naming any one, and without the details. In answer to this question, the witness replied that the prosecuting witness complained that she had been assaulted by an Indian. No objection was made to this answer, presumably because it had no tendency to identify the appellant as the party accused, there being other Indians on the reservation in the immediate vicinity. Later, the husband was called and interrogated as to the complaint made to him, and the attorney representing the government then insisted for the first time that he had a right to go into the details of the complaint, even to the extent of naming the accused party, under the doctrine of res gestæ. An objection to the question was overruled, and the witness answered that his wife complained that she had been assaulted by an Indian, the boy who worked on the mail boat. Other testimony in the case tended to identify the accused as the boy who worked on the boat. After admonishing or cautioning the first person to whom complaint was made not to give details or name the accused party, it is not at all clear to us why the government should insist that a complaint made to the husband several hours later was part of the res gestæ, because, whatever argument might be made in support of the first complaint, no well-considered case can be found holding that a complaint or declaration made by a woman of mature years, in full possession of her natural faculties, nearly five hours after an assault, is a part of the res gestæ. In order to constitute a part of the res gestæ, the declaration or statement must usually be made spontaneously, at or near the time of the assault, and here there was no spontaneity whatever about it. See 22 C. J. 462, where many authorities are cited in the notes. In the court below, the government made no claim that testimony relating to complaints was admissible on any other ground than as a part of the res gestæ, nor is it seriously contended at the present time that the testi-

mony was admissible on any other ground. In any event, the overwhelming weight of authority holds to the rule that, unless the complaint is so closely connected with the time or place of the crime as to form a part of the res gestæ, the details of what the prosecuting witness said, and particularly the naming of the person accused of the crime, cannot be proved on direct examination. Underhill's Criminal Evidence (3d Ed.) § 612; State v. Griffin, 43 Wash. 591, 86 P. 951, 11 Ann. Cas. 95, and cases there cited. The admission of the testimony relating to the complaint made to the husband was therefore error.

Whether such an error can be cured in a case of this gravity by striking the testimony is at least questionable; and whether, if curable, it was in fact cured by the equivocal action taken by the court below, is still more questionable. But these questions will not arise on a retrial.

Reversed and remanded for a new trial.

WILBUR, Circuit Judge (dissenting).

With reference to the sole question presented in the briefs and opinion, the first argument of this case last discussed in the opinion by Judge RUDKIN, I am satisfied that the error complained of was not prejudicial, and was cured by the court's instruction to the jury to disregard the evidence as to the statements of the prosecutrix giving the name of her assailant. Upon the question as to whether or not the jury could return a verdict without agreeing upon the penalty, I am unable to concur in the conclusion of the majority. I concede that the interpretation placed upon the act of Congress therein quoted with relation to the qualification by the jury of their verdict of guilty is more merciful and perhaps more desirable than the interpretation placed thereon by the trial court, which I believe to be the correct interpretation. As the matter is of great importance not only to the defendant but in the administration of the criminal laws of the United States, I will briefly state my reason for my conclusion:

The punishment of death for rape was imposed by early legislation of the federal government. Act of March 3, 1825, c. 65, § 4, 4 Stat. 115. In 1897 Congress enacted a law to do away with capital punishment in many cases an dto authorize the jury to avoid the infliction of capital punishment, in the event that it so desired. 29 Stat. 487. This statute, so far as it relates to the appeal under consideration, is quoted in the opinion of Judge RUDKIN. This act is unique in form, in that it does not purport to change the punishment for rape established by law, but, on the contrary, permits the jury to return a qualified verdict by adding the words "without capital punishment" to the verdict of guilty. In that event, the above-mentioned act directs that the court shall sentence the defendant to hard labor for life. 29 Stat. 487, § 1, supra.

Section 5339, Revised Statutes, imposed the punishment of death upon "Every person who commits murder—First. Within any fort, arsenal, dock-yard, magazine, or in any other place or district of country under the exclusive jurisdiction of the United States * * *," and section 5345 provides that: "Every person who, within any of the places or upon any of the waters specified in section fifty-three hundred and thirty-nine, commits the crime of rape shall suffer death." Rev. St. U. S. (2d Ed.) 1878, p. 1038.

It will be observed that by the terms of this statute of 1897 the punishment is not fixed by the jury, but is fixed by the law, at death, with power on the part of the jury to ameliorate that punishment, if it should so recommend. In view of the fact that the function of the jury is to determine the facts, and in a criminal case to determine whether or not the evidence is sufficient, under the law, to establish the guilt of the defendant, it must be clear that the right accorded to the jury by the statute of 1897 in a case of this sort was the right or power to restrict the punishment to life imprisonment, thus giving to its recommendation for mercy the force of a legislative enactment in the particular case pending before the jury. In order to do this, it is clear, it must act in the only way in which a jury can act under our system, that is, as a unit, and it can only act as a unit when the twelve members agree. While this law has been in effect for thirty-three years, no decisions have been cited in which the question has been raised or decided, and we have found none. In Mississippi, a somewhat similar provision of the law of that state has been construed to require a unanimous agreement of the jury upon the ameliorating punishment, in order to make it effective, and it has there been held that the jury is bound to return a verdict as to the guilt of the defendant, even if it could not agree upon the qualifying recommendation. Fleming v. State, 60 Miss. 434; Green v. State, 55 Miss. 454. In California the jury, by an early enactment (an act to amend section 190, Pen. Code, approved March 28, 1874, Amendments to the Codes, 1873–74, p. 457), was given the dis-

cretion to impose the death penalty or to fix imprisonment for life. By decision shortly thereafter (1874), People v. Welch, 49 Cal. 174, this law was interpreted to be the equivalent of a law vesting in the jury discretion to ameliorate the punishment from death to life imprisonment; the effect of this being that, if the jury agreed upon the guilt of the defendant, but could not agree upon the penalty, they in effect determined that the defendant must suffer the death penalty. This construction is manifest in the decision of People v. French (Cal. Sup.) 7 P. 822 (opinion filed August 29, 1885) and on rehearing 69 Cal. 169, 10 P. 378 (opinion filed March 26, 1886). Over fifty years later, however, the California Supreme Court held that the statute vested in the jury the discretion to fix the punishment at death or life imprisonment, and that a verdict of guilty of murder in the first degree, without fixing the punishment either directly or by implication, was insufficient to justify a judgment; consequently, where the jury agreed upon the guilt of the defendant, but disagreed as to the penalty, the conviction must be set aside. People v. Hall, 199 Cal. 451, 249 P. 859. So far as these California decisions bear upon the subject, it will be observed that, when the law was construed as conferring discretion upon the jury to ameliorate the punishment, the failure of the jury to agree upon the punishment does not alter their duty to return a verdict of conviction. These decisions would be applicable to the federal statute now under consideration, which clearly makes the amelioration of the penalty permissive.

In a case presented to the Supreme Court of the United States shortly after the enactment of the statute of 1897, it was held that, in submitting to the jury the question as to the penalty to be imposed, the court should not give any instructions to the jury which would in any wise limit the action of the jurors in arriving at their conclusion. Winston v. United States, 172 U. S. 303, 19 S. Ct. 212, 43 L. Ed. 456. It appears from the opinion in that case that the jury had been instructed, as they were instructed in the case at bar, namely, that, if they could not agree upon the penalty that should be imposed, they should, nevertheless, return a verdict as to the guilt of the defendant. The only value of the opinion of the Supreme Court upon the question here involved is the fact that, although the record showed that the three juries whose verdicts were involved in the appeal had each been instructed as the jury was instructed in the case at bar, the Supreme Court did not consider the instruction was so obviously erroneous as to dispose of the case on that ground, or even to point out such error, but, on the contrary, reversed the case because of the fact that the instructions of the trial court sought to limit the discretion of the jury in fixing the punishment.

I think that the trial court correctly construed the statute here in question. It might have been more in accordance with mercy and with the ordinary rules concerning the duties of jurors, such as the rule giving to a defendant the benefit of any reasonable doubt that might arise in the mind of any one juror, to have provided the punishment should be life imprisonment, unless the jury should fix the punishment at death. This would require a unanimous verdict in favor of the death penalty, in order to inflict that penalty. But the legislation is evidently framed with the idea that the punishment for rape shall be death as theretofore provided by Congress, unless all the jury shall agree upon the lesser punishment.