[Criminal No. 855. Filed June 7, 1937.]

[68 Pac. (2d) 669.]

ERNEST PATTEN, Appellant, v. STATE OF ARIZONA, Respondent.

Mr. M. V. Gibbons, for Appellant.

Mr. Joe Conway, Attorney General and Mr. W. E. Polley, his Assistant, for the State.

ROSS, J.—■ Appellant, Ernest Patten, on December 25, 1936, at about 5:30 P. M. at McNary, Apache county, shot and killed Creacy Mae Millard. He was informed against by the county attorney for first degree murder. Upon his arraignment, on December 26, 1936, the court informed him that he was entitled to have an attorney to defend him and offered to appoint one. He told the court he did not want an attorney; that he wanted to plead guilty. The court, notwithstanding, appointed to defend him M. V. Gibbons, a member of the bar in Apache county, and postponed the time for taking appellant's plea to December 30, 1936, at 2 P. M. At the hour fixed for taking plea, the State being represented by the county attorney and appellant by his attorney, M. V. Gibbons, the following proceedings were had by the court:

"This is the time and place heretofore set by this court for taking the plea of the defendant, he having been heretofore duly arraigned.

" (To the defendant) You may stand up.

"This is the time for taking your plea in this case, Ernest Patten, are you ready at this time to enter your plea?

"Ernest Patten: Yes.

"Q. What is your plea—guilty or not guilty? A. Guilty.

"Q. The record may show that the defendant enters a plea of guilty to murder in the first degree. Now the Court, Patten, desires to interrogate you, to ask you some questions to be sure that you fully under-

stand just what you are doing. Now, you want to plead guilty? A. Yes.

"Q. To the crime of murder in the first degree, you want to plead guilty? A. In the first degree.

"Q. And you are pleading guilty to that charge? A. I am pleading guilty.

"Q. You realize that the Court may sentence you to death—is your answer yes? A. Yes.

"Q. And you would rather have one man, that is the Court, to hear and pass upon your case than to submit this to a jury of twelve men? Is that true?

"(Silence.)

"Let me explain. Ordinarily, Patten, in a case of this gravity, a jury of twelve men determines the punishment; but I am asking you if you would rather that the Court hear and pass upon the matter of this punishment than you would to have twelve men? A. Yes, I would rather for your honor to pass on it.

"Q. You realize fully just what you are pleading guilty to, do you? A. Yes.

"Q. And you understand that the only thing left for the Court to do, under the plea which you have just entered, is to determine the sentence—death or life imprisonment? You understand that, do you? A. Yes."

Section 4585, Revised Code of 1928, reads, in part:

"Every person guilty of murder in the first degree shall suffer death or imprisonment in the state prison for life, at the discretion of the jury trying the same, or, upon the plea of guilty, the court shall determine the same."

The court, in order to inform itself so as to properly exercise its discretion in inflicting punishment, fixed December 31, 1936, at 1 P. M., for a hearing, at which time the testimony of eye-witnesses was taken as also that of the appellant. There were no material conflicts. It appears therefrom that appellant and the deceased were both negroes; that they had been living together and were preparing to marry very soon; that deceased had a brother living in McNary and

upon visiting his home she learned he was ill and needed some beef tallow to treat his sickness, or, as one witness said, "to grease him." She and two others and Curtis McLemore rode to Pine Top, close by, in McLemore's automobile and secured the tallow. When they returned, and while McLemore and deceased were sitting in the automobile in front of the Mitchell Café in McNary, appellant, after exchanging some words with deceased, approached within a couple of feet and discharged from a revolver three bullets into the body of deceased, and shot McLemore once. In his statement to the court he said he shot and killed Creacy Mae Millard through jealousy. He told the officer who arrested him, when asked why he killed the deceased, "I am mad."

The court, after hearing the evidence, postponed the time of sentence to January 4, 1937, at which time he imposed the death penalty. Before doing so the court made the following statement:

"The Court never approached a task and a duty more carefully and has never given any matter more thought and attention than I have this. The law regards human life as the most sacred of all interests committed to its protection, and no more solemn duty can be imposed upon the courts than the duty of protecting and the duty of taking human life. To take the life of a human being is an awful thing even when it is taken by the law in the due administration of justice. As the Court heretofore indicated, in examining the record I did it with the greatest of care in favor of life; and if there are any circumstances of extenuation or mitigation, the Court should not impose the death penalty."

The appeal, on motion of the Attorney General, was submitted to this court on the record.

It is evident that no jury ever more carefully and conscientiously discharged the very grave duty of fixing punishment than did the court in this case. The

statute does not make its discretion less binding than that of a trial jury. The court was very careful to see that appellant's rights were protected in every way and that he should have a fair trial.

In *Shaughnessy* v. *State*, 43 Ariz. 445, 32 Pac. (2d) 337, 340, we said:

"We cannot say the court abused its discretion in imposing the death penalty. The determination of the punishment when an accused pleads guilty of first degree murder is committed by the Legislature of this state to the trial court, and to that court only, and, before we would be justified in disturbing that determination, it should clearly appear from the whole case that the court's judgment was capricious and arbitrary. *Winston* v. *United States*, 172 U. S. 303, 19 Sup. Ct. 212, 43 L. Ed. 456."

There appearing to be no reason for reversal, the judgment is affirmed.

McALISTER, C. J., and LOCKWOOD, J., concur.