**Charles Douglas RABY, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 71938.

Court of Criminal Appeals of Texas, En Banc.

March 4, 1998.

Rehearing Denied April 22, 1998.

**2**

Chris Flood, Houston, for appellant.

Carol M. Cameron, Asst. Dist. Atty., Houston, Matthew Paul, State's Atty., Austin, for State.

---

*OPINION*

KELLER, Judge, delivered the opinion of the Court in which McCORMICK, Presiding Judge, and MANSFIELD, HOLLAND and WOMACK, Judges, joined.

Appellant, Charles Douglas Raby, Jr., was convicted of capital murder in June of 1994.[1] TEX. PENAL CODE ANN. § 19.03(a)(2). Pursuant to the jury's answers to the special issues set forth in Texas Code of Criminal Procedure art. 37.071 §§ 2(b) and 2(e), the trial judge sentenced appellant to death.[2] Article 37.071 § 2(g). Direct appeal is automatic. Article 37.071 § 2(h). We will affirm.

Edna Mae Franklin, the 72–year–old complainant in this case, lived with her two grandsons, who were appellant's friends. Although Franklin had barred appellant from her home, her grandsons often snuck him in through a window and allowed him to spend the night. On the night of the offense, the two grandsons left their grandmother at home and went out. Upon their return, one of them discovered Franklin dead on the living room floor. She had been severely beaten and repeatedly stabbed, and her throat was cut. Her attacker had undressed her below the waist. The contents of her purse had been emptied onto her bedroom floor. Police concluded the attacker's point of entry was the same window through which the grandsons had previously ushered appellant. After further investigation, police arrested appellant for the offense, and he confessed to the killing.

At trial, appellant pleaded not guilty to the capital murder of Franklin. At the close of the guilt/innocence phase evidence, the jury returned a guilty verdict. At the punishment phase, the State introduced evidence of a variety of previous offenses and bad acts. Witnesses testified to a series of assaults committed by appellant, with the victims including appellant's girlfriend, his stepfather, a ten-year-old boy, a two-year-old girl, a friend's mother, and others. While incarcerated, appellant reportedly attacked jailers and sheriff's deputies, fought with other inmates, and was found in possession of weap-

---

1. The crime was committed in October of 1992.

2. Any subsequent references to Articles are to those in the Texas Code of Criminal Procedure unless otherwise identified.

ons on more than one occasion. Witnesses also testified about appellant's involvement in several convenience store robberies. Appellant offered testimony at punishment relating to his troubled upbringing, including his mother's mental problems, his commitment to foster care and institutions, and episodes of physical abuse. Other witnesses testified that appellant had a peaceful disposition and that his problems during incarceration had been provoked by jailers. At the close of the punishment phase evidence, the jury answered the first special issue "yes" and the second special issue "no." As required by statute, the trial court then sentenced appellant to death.

■ In his first point of error, appellant complains that he was erroneously denied the right to voir dire prospective jurors on whether they could "consider" particular types of mitigating evidence during the capital sentencing phase. Prior to the commencement of voir dire, appellant filed a "Motion to Permit Voir Dire of Prospective Jurors on Mitigating Evidence." By that motion, appellant requested that his attorneys be permitted to question prospective jurors about "whether . . . they could consider or would be willing to consider, at least in some cases, the following types of evidence in mitigation of punishment:"

(i) A capital defendant's relative youth at the time of the crime (e.g., twenty-two years old);

(ii) The fact that a capital defendant was intoxicated at the time of the crime;

(iii) The fact that a capital defendant suffers from a medically-diagnosed form of mental or emotional illness;

(iv) The fact that a capital defendant was abused or neglected as a child;

(v) The fact that a capital defendant has exhibited positive character traits, such as having engaged in acts of kindness towards family members;

(vi) Any other relevant mitigating factor that would tend to militate in favor of a life sentence rather than a death sentence.

Defendant believes that such questions would not require a prospective capital juror to "commit" to returning a life sentence if any or all of the foregoing types of mitigating evidence were in fact introduced at trial. Nor does Defendant intend for prospective jurors to "commit" that they will assign any particular mitigating weight to such evidence if it were introduced at trial. Rather, Defendant merely wishes to inquire into whether prospective jurors could "consider" such evidence, at least in some cases, it mitigating [sic] of punishment, assuming it was introduced and jurors in fact believed that such mitigating factors were found to exist.

Appellant then continued in his motion to state that he recognized that this Court has held such questions to be improper.[3] He also recognized that this Court has held that, if such questions should be allowed and a prospective juror states that he would not consider a particular type of evidence as mitigating, that prospective juror cannot be removed for cause on that basis. See Morrow v. State, 910 S.W.2d 471 (Tex.Crim.App. 1995), cert. denied 517 U.S. 1192, 116 S.Ct. 1683, 134 L.Ed.2d 784 (1996). However, appellant propounded in his motion, as he propounds on appeal, that these cases were erroneously decided and should be revisited.

We reiterated in Green v. State, 912 S.W.2d 189 (Tex.Crim.App.1995), pet. for cert. filed (Jan. 2, 1996) (No. 95–7651), that the law does not require a juror to consider any particular piece of evidence as mitigating; all the law requires is that a defendant be allowed to present relevant mitigating evidence and that the jury be provided a vehicle to give mitigating effect to that evidence if the jury finds it to be mitigating. A trial court does not abuse its discretion by refusing to allow a defendant to ask venire members questions based on facts peculiar to the case on trial (e.g. questions about particular mitigating evidence). Coleman v. State, 881 S.W.2d 344 (Tex.Crim.App.1994), cert. denied, U.S. , 513 U.S. 1096, 115 S.Ct. 763, 130 L.Ed.2d 660 (1995). Appellant has given us no compelling reason to revisit our prece-

3. For authority for this proposition, appellant cites us to the non-published case of Hood v.

State, No. 71,167 (Tex.Crim.App. Nov. 24, 1993)(not designated for publication).

dent on this issue. We overrule point of error one.

■ In point of error two, appellant claims that the trial court erred in denying him an evidentiary hearing on his claim that the death penalty is administered in a racially discriminatory manner.[4] Specifically, he argues that defendants are more likely to be given the death penalty when the victim is white. Appellant's argument is purely based on existing statistical studies allegedly showing that, in Texas, the death penalty is more likely to be assessed when the victim is white than when the victim is a member of a racial minority. Appellant offers no evidence specific to his own case that would support an inference that racial consideration played a part in his sentence. This argument has been addressed and rejected by both this Court and the United States Supreme Court and, without more, we will not revisit it here. *Robinson v. State*, 851 S.W.2d 216, 232 (Tex. Crim.App.1991), *cert. denied*, U.S. , 512 U.S. 1246, 114 S.Ct. 2765, 129 L.Ed.2d 879 (1994); *McCleskey v. Kemp*, 481 U.S. 279, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987). We overrule point of error two.

■ Appellant avers in his third point of error that the trial court erred in denying his motion to voir dire prospective jurors regarding evidence of voluntary intoxication. Specifically, at trial, appellant requested the following:

Defendant intends to offer, during both the guilt-innocence and punishment phases of trial, evidence that he was highly intoxicated at the time of the alleged offense.

Section 8.04(a) of the Texas Penal Code provides that evidence of voluntary intoxication cannot be used as a defense to the commission of a crime. Section 8.04(b) provides that voluntary intoxication that rises to the level of "temporary insanity"— as defined by § 8.01 of the Penal Code— may be considered in mitigation of punishment, but only if it rises to the level of "temporary insanity." Defendant believes that both § 8.04(a) and § 8.04(b), and any instructions submitted pursuant to those statutory provisions, are unconstitutional. Accordingly, Defendant wishes to voir dire the members of the array in a manner that would, admittedly, be inconsistent with § 8.04's statutory commands. However, Defendant believes that such voir dire questions are permitted by both the federal and state Constitutions.

The motion then proceeds to set out argument and authorities for why the trial court should declare §§ 8.04(a) and (b) unconstitutional and allow him to ask venire members two different questions.[5] In his brief, which is simply a restatement of his trial motion, appellant conclusorily states that his proposed questions were proper simply because §§ 8.04(a) and (b) allegedly operate in an unconstitutional manner.

In his argument concerning the constitutionality of § 8.04(a), appellant claims that Texas is in the distinct minority of states that do not allow evidence of voluntary intoxication at guilt/innocence for the purpose of showing whether a defendant had the capacity to form the requisite intent for a specific intent crime. In urging us to follow the lead of these other jurisdictions, appellant claims that § 8.04(a) suffers from the same constitutional defect that plagued the trial court's jury instruction in *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).

---

4. Appellant claims that this is true in Texas, generally, and Harris County, specifically.

Appellant also argues that the trial court erred in refusing to appoint an expert to study this subject. However, appellant has not adequately briefed this latter point. Therefore, we shall not address it. Tex.R.App. Proc. 74(f). *See also Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985).

5. These two questions consist of the following:

(1) Whether prospective jurors could consider acquitting a criminal defendant of capital murder and convicting him of lesser-included felo- ny murder if they believed that the defendant, because of his voluntary intoxication at the time of the crime, lacked the specific intent required to commit capital murder; and

(2) Whether prospective jurors could consider a capital defendant's voluntary intoxication which does not rise to the level of "temporary insanity" in mitigation of punishment.

Appellant does not here argue that these questions were proper notwithstanding the constitutionality of §§ 8.04(a) and (b). Therefore, this question shall not be addressed.

In *Sandstrom,* the United States Supreme Court reversed a conviction for "deliberate homicide," or murder committed "purposely or knowingly," because the trial court charged the jury that "the law presumes that a person intends the ordinary consequences of his voluntary acts." The Court held that a reasonable juror might have interpreted the instruction as shifting the burden on the requisite element of criminal intent in violation of the Fourteenth Amendment's requirement that the State prove each and every element of a criminal offense beyond a reasonable doubt.

Appellant argues that the § 8.04(a) instruction, "Voluntary intoxication does not constitute a defense to the commission of the crime," suffers the same defect as the above utilized instruction because a reasonable juror could interpret it as precluding consideration of such intoxication evidence for any purpose, including as evidence negating specific intent. We do not find appellant's unsupported argument persuasive.

In *Sandstrom,* the jury was essentially instructed, *to the State's benefit,* that the defendant was *presumed* to have the requisite criminal intent. If the jury found that the defendant committed a voluntary act, *e.g.* becoming intoxicated, then they were authorized to conclude, without more, that he intended to engage in any behavior resulting from that intoxication, *e.g.* committing murder. Proof of intoxication, therefore, amounted to proof of criminal intent. In Texas, on the other hand, the State is required to specifically prove, beyond a reasonable doubt, that a defendant *intended to commit murder,* regardless of any state of intoxication. Unlike the instruction in *Sandstrom,* the utilization of § 8.04(a) does not directly work to the benefit of the State. Given this, appellant has not persuaded us that § 8.04(a) operated in an unconstitutional manner.

■ In his argument concerning the constitutionality of § 8.04(b), appellant states that a § 8.04(b) instruction submitted at the punishment phase would be a clear violation of the Eighth and Fourteenth Amendments to the United States Constitution. For authority, appellant cites us to Judge Clinton's *dissenting* opinion in *Ex parte Rogers,* 819 S.W.2d 533, 537 (Tex.Crim.App.1991), and then generally refers us to various United States Supreme Court cases, but does not set out what exactly we are supposed to glean from these cases in relation to the issue at hand.[6] Without more, we are not persuaded that § 8.04(b) operated in an unconstitutional manner. The trial judge did not abuse his discretion in overruling appellant's motion. We overrule point of error three.

■ In his related points of error four and five, appellant argues that the trial court committed reversible error by denying his motion to permit jury argument "regarding evidence of voluntary intoxication as mitigating evidence" and by denying his requested instruction concerning jurors' consideration of voluntary intoxication "as a mitigating factor." Specifically, appellant moved the trial court that he be allowed to argue at punishment:

> [T]hat jurors should consider and give mitigating effect to Defendant's evidence of voluntary intoxication even if jurors do not believe that Defendant was rendered "temporarily insane" because of his intoxication.

Furthermore, the instruction that appellant requested advised the jurors that:

> In deliberating over the special issue, you should consider as a mitigating factor the Defendant's voluntary intoxication at the time of the crime. . . .

> Consideration of mitigating evidence does not mean that you necessarily must give such evidence any particular weight. Rather, each of you must individually decide how much weight this mitigating factor deserves, assuming that you believe that the Defendant was in fact intoxicated at the time of the crime.

---

**6.** These cases include: *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976); *Eddings v. Oklahoma,* 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982); *Hitchcock v. Dugger,* 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987); *Bell v. Ohio,* 438 U.S. 637, 98 S.Ct. 2977, 57 L.Ed.2d 1010 (1978); and *Winston v. United States,* 172 U.S. 303, 19 S.Ct. 212, 43 L.Ed. 456 (1899).

Assuming that you believe that the Defendant was in fact intoxicated, you cannot give this mitigating factor no weight by entirely excluding it from your consideration. Your consideration of voluntary intoxication as a mitigating factor does not require that you find that the Defendant was so intoxicated that he did not know the difference between right and wrong at the time of the crime. Rather, assuming that you believe that the Defendant's ingestion of drugs or alcohol impaired the Defendant's sense of judgment in any appreciable manner, you must consider the evidence of voluntary intoxication as a mitigating factor.

Appellant again asserts that the alleged unconstitutionality of § 8.04(b) makes both of these requests proper. However, the constitutionality of § 8.04(b) notwithstanding, we noted in point of error one, *supra*, that the law does not require a juror to consider any particular piece of evidence as mitigating; all the law requires is that a defendant be allowed to present relevant mitigating evidence and that the jury be provided a vehicle to give mitigating effect to that evidence if the jury finds it to be mitigating. *Green, supra.* Hence, appellant would have been misstating the law had he been allowed to argue or had the court instructed the jury as he proposed. *See also Colella v. State,* 915 S.W.2d 834 (Tex.Crim.App.1995) (There is no *per se* evidence that must be viewed by a juror as creating a mitigating effect). We overrule points of error four and five.

■ Appellant advances in his sixth point of error that the trial court erred in failing to charge the jury that it could acquit appellant of capital murder and find him guilty only of murder if it found that his voluntary intoxication negated the specific intent required for a capital murder conviction. Appellant concedes that Tex. Penal Code § 8.04(a) specifically provides that voluntary intoxication cannot be used as a defense to criminal liability. He also admits that the courts of this State have held that evidence of voluntary intoxication cannot be used to negate the

element of specific intent. *See Hawkins v. State,* 605 S.W.2d 586 (Tex.Crim.App.1980). However, the entire thrust of appellant's argument seems to be that Texas is in the minority in its view and, therefore, we should adopt the reasoning of the courts of other jurisdictions. Until and unless appellant presents us with authority binding on our own jurisdiction or provides us with a sufficiently cogent argument to warrant departure from our present jurisprudence, we decline to accept his invitation. We overrule point of error six.

■ In his seventh, eighth, and ninth points of error, appellant avers that he should have been allowed to voir dire prospective jurors about Texas' parole law in capital cases and to inform them about the specifics involved. Specifically, appellant alleges that denying jurors the knowledge of a defendant's 35 year minimum incarceration if sentenced to life in prison results in the arbitrary imposition of the death penalty in violation of the Eighth Amendment to the United States Constitution and of his due process rights under the Sixth and Fourteenth Amendments.

We have already decided these issues adversely to appellant. *Smith v. State,* 898 S.W.2d 838 (Tex.Crim.App.)(plur.op.), *cert. denied,* U.S. , 516 U.S. 843, 116 S.Ct. 131, 133 L.Ed.2d 80 (1995); *Willingham v. State,* 897 S.W.2d 351 (Tex.Crim.App.), *cert. denied,* U.S. , 516 U.S. 946, 116 S.Ct. 385, 133 L.Ed.2d 307 (1995); *Broxton v. State,* 909 S.W.2d 912 (Tex.Crim.App.1995); *Sonnier v. State,* 913 S.W.2d 511 (Tex.Crim.App.1995); *Lawton v. State,* 913 S.W.2d 542 (Tex.Crim. App.1995). Appellant has given us no reason to revisit our analyses in these cases, nor has he shown us any distinguishing evidence in the record or provided us with any other reason why these cases should not control in the instant case. We overrule points of error seven, eight, and nine.

■ In his tenth point of error, appellant contends that the provision of Article 37.071 § 2(a)[7] prohibiting the trial court or the

7. The pertinent part of Article 37.071 § 2(a) reads:

The court, the attorney representing the state, the defendant, or the defendant's counsel may not inform a juror or a prospective juror of the

parties from informing the jury of the effect of their failure to agree on the punishment issues is unconstitutional. For his authority, appellant cites us to a 1948 United States Supreme Court case [8] and to three cases from other jurisdictions which are not binding on this Court. However, Article 37.071 § 2(a), as amended by the 1991 Legislature, is substantively the same as the older Article 37.071(g) (Vernon 1990), which we have previously held to be constitutional on numerous occasions. *Rousseau v. State*, 855 S.W.2d 666, 686–87 (Tex.Crim.App.), *cert. denied*, U.S. , 510 U.S. 919, 114 S.Ct. 313, 126 L.Ed.2d 260 (1993); *Felder v. State*, 848 S.W.2d 85, 101 (Tex.Crim.App.1992), *cert. denied*, U.S. , 510 U.S. 829, 114 S.Ct. 95, 126 L.Ed.2d 62 (1993); *Davis v. State*, 782 S.W.2d 211, 221–22 (Tex.Crim.App.1989), *cert. denied*, 495 U.S. 940, 110 S.Ct. 2193, 109 L.Ed.2d 520 (1990). We hold that the same analysis that applied to the older version applies to the new statute. *Green, supra.* We overrule point of error ten.

■ Appellant posits in his eleventh point of error that the death penalty, as presently administered, is cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution. Appellant adopts the dissenting opinion of Justice Blackmun in *Callins v. Collins*, 510 U.S. 1141, 114 S.Ct. 1127, 127 L.Ed.2d 435 (1994). We have recently addressed this precise argument and found adversely to appellant. *Lawton*, 913 S.W.2d at 558. Appellant has provided us with no new arguments. We overrule point of error eleven.

■ In his twelfth point of error, appellant asserts that the capital sentencing scheme is unconstitutional under the Eighth Amendment and the Equal Protection Clause of the Fourteenth Amendment because of the many different schemes that have been in effect since 1989.

This Court has held that, when challenging the constitutionality of a statute:

[I]t is incumbent upon the defendant to show that in its operation the statute is unconstitutional as to him in his situation; that it may be unconstitutional as to others is not sufficient.

*Santikos v. State*, 836 S.W.2d 631 (Tex.Crim. App.), *cert. denied*, 506 U.S. 999, 113 S.Ct. 600, 121 L.Ed.2d 537 (1992). Appellant was tried under the 1992 version of Article 37.071.[9] Since appellant has simply made a global argument as to all capital defendants since 1989, and has not shown us how his specific rights were violated by application of the statute, his contentions are without merit. *Sonnier*, 913 S.W.2d at 520–21; *Lawton*, 913 S.W.2d at 559–560. We overrule point of error twelve.

In his thirteenth point of error, appellant attacks the constitutionality of Article 37.071 § 2(e) alleging that it invites the open-ended discretion condemned by the United States Supreme Court in *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). This issue has also been addressed recently and decided adversely to appellant's position. *Lawton*, 913 S.W.2d at 560; *McFarland v. State*, 928 S.W.2d 482, 499 (Tex.Crim.App.1996). We overrule point of error thirteen.

■ In point of error fourteen, appellant alleges that the trial court committed reversible error by refusing to instruct jurors that they should not consider mitigating evidence in aggravation of punishment. Specifically, appellant requested inclusion of the following instructions:

You are instructed that certain evidence introduced to you has been offered in mitigation of the Defendant's punishment. That evidence, including youth and mental health testimony, may only be considered by you as mitigation [sic] of his punishment.

If you decide that an aspect of the Defendant's character and record or circumstances of the crime is a mitigating circum-

---

8. *Andres v. United States*, 333 U.S. 740, 752, 68 S.Ct. 880, 885–86, 92 L.Ed. 1055 (1948).

effect of a failure of a jury to agree on issues submitted under Subsection (c) or (e) of this article.

9. The version which went into effect September 1, 1991.

stance, you must not give it aggravating effect. Thus, if in your judgment, a mitigating circumstance independently calls for a life sentence even though it also tends to support a "yes" answer to a Special Issue, you must not answer the Special Issue "yes," but rather you should answer it "no".

As we stated in *Robertson v. State*, 871 S.W.2d 701, 711–12 (Tex.Crim.App.1993), *cert. denied*, U.S. , 513 U.S. 853, 115 S.Ct. 155, 130 L.Ed.2d 94 (1994):

Each juror may or may not believe certain evidence is mitigating; however, the constitution only requires that where a juror believes there is relevant mitigating evidence, that juror must have a vehicle to give his or her reasoned moral response to such evidence.

\* \* \*

Appellant was not entitled to an instruction on what evidence was mitigating or on what weight to give any mitigating evidence presented at trial.

In light of these statements, appellant's first requested charge is a misstatement of the law in that it essentially instructs jurors that youth and mental health are implicitly mitigating. *Id.* Furthermore, appellant's second requested instruction is also a misstatement of law in light of *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989). *Penry* does not require that, if a jury finds evidence to be both mitigating and aggravating, then it should give the evidence only its mitigating weight. *Zimmerman v. State*, 860 S.W.2d 89, 102 (Tex.Crim.App.1993).[10] In fact, *Penry* specifically refers to the double-edged nature of some evidence. We overrule point of error fourteen.

■ Appellant contends in his fifteenth point of error that the definition of "mitigating evidence" in Article 37.071 § 2(f)(4) makes the article facially unconstitutional because it limits the concept of "mitigation" to "factors that render a capital defendant less morally 'blameworthy' " for the commission of the capital murder. Article 37.071 § 2(f)(4) "defines" "mitigating evidence" to be "evidence that a juror *might* regard as reducing the defendant's moral blameworthiness." (Emphasis added.) There is no evidence that must be viewed by a juror as being *per se* mitigating. Instead, jurors must individually determine what evidence, if any, mitigates against the imposition of the death penalty and what weight, if any, to give that evidence in its consideration. Article 37.071 § 2(e) yields further support to this interpretation in that it requires the court to instruct the jury to take into consideration *"all* of the evidence, *including* the circumstances of the offense, the defendant's character and background, *and* the personal moral culpability of the defendant" (emphasis added) in determining whether sufficient mitigating circumstances exist to warrant a life sentence. Because the consideration and weighing of mitigating evidence is an open-ended, subjective determination engaged in by each individual juror, we conclude that Article 37.071 § 2(f)(4) does not unconstitutionally narrow the jury's discretion to factors concerning only moral blameworthiness as appellant alleges. *Lawton*, 913 S.W.2d at 555–556; *see also Colella, supra; McFarland*, No. 71,557, slip op. at 49. We overrule point of error fifteen.

■ Finally, in his sixteenth point of error, appellant complains that Article 37.071 § 2(e) is facially unconstitutional in that it fails to assign a burden of proof. The failure to assign a burden of proof to the mitigation issue does not render the scheme unconstitutional. In instances where mitigating evidence is presented, all that is constitutionally required is a vehicle by which the jury can consider and give effect to the mitigating evidence relevant to a defendant's background, character, or the circumstances of the crime. *Barnes v. State*, 876 S.W.2d 316, 329 (Tex.Crim.App.), *cert. denied*, U.S. , 513 U.S. 861, 115 S.Ct. 174, 130 L.Ed.2d 110 (1994); *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989); *Johnson*

---

**10.** *Zimmerman* was remanded by the United States Supreme Court to review in light of *Johnson v. Texas*, 509 U.S. 350, 113 S.Ct. 2658, 125 L.Ed.2d 290 (1993). However, we reaffirmed the original holding on appeal. *Zimmerman v. State*, 881 S.W.2d 360 (Tex.Crim.App.), *cert. denied*, U.S. , 513 U.S. 1021, 115 S.Ct. 586, 130 L.Ed.2d 500 (1994).

*v. Texas,* 509 U.S. 350, 113 S.Ct. 2658, 125 L.Ed.2d 290 (1993). A capital sentencer need not be instructed how to weigh any particular mitigating fact in the capital sentencing decision. *Tuilaepa v. California,* 512 U.S. 967, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994). The absence of an explicit assignment of the burden of proof does not render Article 37.071 § 2(e) unconstitutional. *See Walton v. Arizona,* 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990); *Lawton, supra; McFarland, supra.* We overrule point of error sixteen.

Finding no reversible error, we affirm the judgment of the trial court.

MEYERS, Judge, concurring.

In point of error one appellant says the trial court erred "by depriving appellant of the right to voir dire prospective jurors on whether they could 'consider' particular types of mitigating evidence during the capital sentencing phase." This point of error suggests appellant was simply seeking to ask prospective jurors whether they could consider certain evidence during the punishment phase of the trial. But this was not appellant's request at trial. There, he asked the trial judge for permission to voir dire prospective jurors about whether "they could consider, or would be willing to consider, at least in some cases, [certain specified] types of evidence *in mitigation of punishment.*" (Emphasis added). This could reasonably be construed as seeking to ask prospective jurors whether they could consider certain evidence *as mitigating evidence.* Under our precedents, such inquiry is improper and thus the trial court did not abuse its discretion in denying it. Arguably the inquiry might also be construed as seeking to ask prospective jurors whether they could consider certain evidence *during the mitigating evidence or punishment phase of trial.* While an inquiry of this nature is not necessarily improper, the inquiry here was not clearly asking this. At best, appellant's inquiry was ambiguous, and for this reason alone, the trial court did not abuse its discretion in denying it.

With these comments, I concur in the disposition of point of error one and otherwise join the opinion.

BAIRD, Judge, concurring and dissenting.

I agree that no error at the guilt phase of trial was sufficient to warrant reversal of appellant's conviction. However, for the reasons expressed in part I, I write separately to address appellant's first point of error. And for the reasons stated in part II, I dissent to the resolution of points of error seven, eight and nine.

I.

Point of error one contends the trial judge erred in denying appellant the opportunity to question veniremembers whether they could consider certain types of evidence in mitigation of punishment. Prior to voir dire, appellant filed a "Motion to Permit Voir Dire of Prospective Jurors on Mitigating Evidence." Appellant sought to ask the veniremembers if they could consider the following types of evidence in mitigation of punishment:

(i) A capital defendant's relative youth at the time of the crime (e.g., twenty-two years of age);

(ii) The fact that a capital defendant was voluntarily intoxicated on alcohol or drugs, legal or illegal, at the time of the crime;

(iii) The fact that a capital defendant suffers from a medically-diagnosed form of mental or emotional illness;

(iv) The fact that a capital defendant was abused or neglected as a child;

(v) The fact that a capital defendant has exhibited positive character traits, such as acts of kindness towards family members;

(vi) Any other relevant mitigating factor that would tend to militate in favor of a life sentence rather than a death sentence.

The trial judge granted the motion. During voir dire, the State objected to some questions framed along the lines requested in the motion. The trial judge sustained the State's objections which are the basis of this point of error.

## A.

The Sixth Amendment guarantees the "assistance of counsel" and a trial before "an impartial jury." U.S. Const. amend. VI. Part of this constitutional guarantee is an adequate voir dire to identify unqualified jurors. *Morgan v. Illinois*, 504 U.S. 719, 729, 112 S.Ct. 2222, 2230, 119 L.Ed.2d 492 (1992) (citing *Dennis v. United States*, 339 U.S. 162, 171–172, 70 S.Ct. 519, 523–524, 94 L.Ed. 734 (1950); and, *Morford v. United States*, 339 U.S. 258, 259, 70 S.Ct. 586, 587, 94 L.Ed. 815 (1950)). Essential to this guarantee is the right to question veniremembers in order to intelligently exercise peremptory challenges and challenges for cause. *Linnell v. State*, 935 S.W.2d 426, 428 (Tex.Cr.App.1996) (citing *Nunfio v. State*, 808 S.W.2d 482 (Tex.Cr.App. 1991)); *Dinkins v. State*, 894 S.W.2d 330, 344–345 (Tex.Cr.App.1995); *Burkett v. State*, 516 S.W.2d 147, 148 (Tex.Cr.App.1974); *Hernandez v. State*, 508 S.W.2d 853 (Tex.Cr.App. 1974) ("[T]he right to propound questions on voir dire, in order to intelligently exercise peremptory challenges, is of the greatest importance."); *McCarter v. State*, 837 S.W.2d 117, 119 (Tex.Cr.App.1992); and, *Naugle v. State*, 118 Tex.Crim. 566, 40 S.W.2d 92, 94 (1931).; *see also, Janecka v. State*, 937 S.W.2d 456, 471 (Tex.Cr.App.1996); *Smith v. State*, 676 S.W.2d 379, 384 (Tex.Cr.App.1984); and, *Mathis v. State*, 167 Tex.Crim. 627, 322 S.W.2d 629 (1959). To make a satisfactory determination of whether a veniremember would be acceptable, the scope of voir dire is necessarily broad.

However, a trial judge may impose reasonable restrictions on voir dire under specific circumstances: (1) where the questions are duplicitous or repetitious. *Dinkins*, 894 S.W.2d at 345; and, *Guerra v. State*, 771 S.W.2d 453, 467 (Tex.Cr.App.1988); (2) where the prospective jurors have already stated their position clearly and unequivocally. *Dinkins*, 894 S.W.2d at 345; and, *Guerra*, 771 S.W.2d at 468 (citing, *Phillips v. State*, 701 S.W.2d 875, 889 (Tex.Cr.App. 1985)); · (3) where the questions are not in proper form. *Dinkins*, 894 S.W.2d at 345; and, *Adams v. State*, 577 S.W.2d 717, 724 (Tex.Cr.App.1979); and, (4) where a question commits prospective jurors to a specific set of facts. *Dinkins*, 894 S.W.2d at 345; and,

*White v. State*, 629 S.W.2d 701, 706 (Tex.Cr. App.1981).

## B.

The Sixth Amendment guarantee to trial by an impartial jury includes the right to have jurors that can follow the law and consider the evidence. In other words, the jury must be able to make an independent determination based on the facts presented at trial, not on any personal opinions they may have. In his classic formulation of the standard for an impartial jury, Chief Justice Marshall explained:

> Were it possible to obtain a jury without any prepossessions whatever respecting the guilt or innocence of the accused, it would be extremely desirable to obtain such a jury; but this is perhaps impossible, and therefore will not be required. The opinion which has been avowed by the court is, that light impressions which may fairly be supposed to yield to the testimony that may be offered, which may leave the mind open to a fair consideration of that testimony, constitute no sufficient objection to a juror; but that those strong and deep impressions which will close the mind against the testimony that may be offered in opposition to them, which will combat that testimony and resist its force, do constitute a sufficient objection to him. Those who try the impartiality of a juror ought to test him by this rule ... The question must always depend on the strength and nature of the opinion which has been formed.

1 Burr's Trial 416.

A general opinion formed without examination of the facts of a case will not automatically disqualify a veniremember. *Black v. State*, 42 Tex. 377, 381 (1875). By the same token, it is improper to give the facts of the case to prospective jurors during voir dire and ask them to form an opinion. We have long recognized prospective jurors should not leap in advance of the law and judicial evidence and settle on issues to be decided at trial. *Rothschild v. State*, 7 Tex. App. 519, 546 (1880). Therefore, while the parties are entitled to a voir dire that fairly

and adequately probes a prospective juror's qualifications, the parties are not necessarily entitled to test the veniremember on his willingness to accept their theory of the case. This means parties cannot detail the case to be presented to seek out only those veniremembers that will look favorably upon their case. Jurors are free to, in their discretion, give evidence any amount of weight without a previous pledge as to their predilections. *See, Ellis v. State,* 69 Tex.Crim. 468, 154 S.W. 1010, 1012 (1913).

Federal courts and other state courts similarly prohibit committing veniremembers in advance of trial. The reason is simple: the jury should reserve judgment until all the evidence has been presented. *United States v. Price,* 888 F.2d 1206, 1211 (7th Cir.1989). The jury should not be asked in advance whether they would give one type of evidence more weight than another. *Sandidge v. Salen Offshore Drilling Co.,* 764 F.2d 252, 258 (5th Cir.1985); *see also, State v. Thursby,* 245 S.W.2d 859, 863 (Mo.1952). Parties cannot search the results of a case in advance. *Id.; see also, Hunt v. State,* 321 Md. 387, 583 A.2d 218 (1991). "Neither the Government nor the accused is entitled to commitment from the triers of fact about what they will ultimately do." *United States v. Reynolds,* 23 M.J. 292 (1987); *see also, United States v. Toomey,* 764 F.2d 678, 683 (9th Cir.1985).

While it is certain veniremembers cannot be asked to form an opinion as to an assumed set of facts to be proved at trial, it is less certain when a question crosses the line from a proper question ferreting out bias and prejudice in a prospective juror to an improper question tending to commit that prospective juror. In recognizing the difficulty in articulating a bright-line rule for this area, Judge Campbell stated:

> Unfortunately, I can conceive of no bright line rule for determining when a question contains too much detail or seeks to commit the venire to a particular answer. Due to the very nature of the issues involved, these decisions will require review on a case-by-case basis.

Maddux v. State, 862 S.W.2d 590, 599 (Tex. Cr.App.1993) (Campbell, J., concurring).

Nevertheless, certain principles have emerged as to what kind of questions would and would not constitute an attempt to commit prospective jurors.

1. *Veniremembers cannot be asked in advance of trial what facts would cause them to vote a certain way.*

Asking prospective jurors what circumstances would cause them to vote a certain way is committing them toward a certain position. *Maddux,* 862 S.W.2d at 599 (Campbell, J., concurring). For example, "tell me what type of cases you think should always result in the death penalty" would be an improper attempt to commit prospective jurors toward a certain position because they are being asked what facts would always cause them to vote a certain way. *Allridge v. State,* 762 S.W.2d 146, 163 (Tex.Cr.App. 1988). If selected, a committed juror would be partial because he would be compelled to stick to his previous opinion, instead of listening to all the evidence before forming an opinion.

2. *There are no magic words.*

There are no magic words as to what would constitute commitment. *Maddux,* 862 S.W.2d at 592, n. 3. Merely asking the prospective juror to "consider" certain conduct without going into any specific details does not necessarily commit that juror. *Id.,* at 600 (Campbell, J., concurring). Words must be judged in the context in which they are uttered; they do not exist alone. Therefore, phrases such as "can you," "will you," "would you," or "could you" are not by themselves words of commitment. For example, "where there was a murder conviction and a child had died, how many of you would still be able to consider probation" was a proper question to elicit potential bias because the prospective jurors were not asked to view probation in any kind of favorable light, the details of the case were not given, nor were there any references to the parties of the case. *Maddux,* 862 S.W.2d at 591.

3. *Fact-specific questions are not prohibited per se.*

"It is axiomatic that for a question to be relevant to one of the issues in the case it must at least implicate one of the legal or factual areas which will be presented in the

trial." *Shipley v. State,* 790 S.W.2d 604, 608–609 (Tex.Cr.App.1990). For example, the question "[h]ave you ever known somebody that was harmed by extramarital affairs" is not committal. *Shipley,* 790 S.W.2d at 608. The question does not disclose any details of the case; i.e., who had the affair or its connection to the case. Furthermore, because the defendant had an extramarital affair before he allegedly shot his wife, the question would have been relevant in uncovering bias. *Shipley,* 790 S.W.2d at 609.

However, a question may contain too many details. For example in *White v. State,* 629 S.W.2d 701, 706 (Tex.Cr.App.1981), the following question was held to be improper:

> [Would you be able to] consider the penalty of confinement for life if it were proved that the defendant went into a store, attempted to rob it or robbed it, aimed a pistol at a woman's head at short range and shot her, killing her instantly, and if the woman's husband testified to that?

This question went beyond questioning prospective jurors about bias toward certain types of punishment. The question resonated with the distinct facts of the case, attempting to gauge the veniremember's feelings, not in any hypothetical situation, but in the case being tried.

In *Atkins v. State,* 951 S.W.2d 787, 789 (Tex.Cr.App.1997), we held the following hypothetical was not a proper question because it was too fact specific:

> ... If the evidence, in a hypothetical case, showed that a person was arrested and they had a crack pipe in their pocket, and they had a residue amount in it, and it could be measured, and it could be seen, is there anyone who could not convict a person, based on that ...

We held the trial judge erred in overruling the defense's objection to this improper question because the answering of this question would serve "no purpose other than to commit the jury to a specific set of facts prior to the presentation of any evidence at trial." *Id.,* 951 S.W.2d at 789.

## C.

The general principles of voir dire apply in capital cases as well. Where a defendant has been convicted of a capital offense, Tex.Code Crim. Proc. Ann. art. 37.071(d)(1) directs the trial court to instruct the jury to:

> [C]onsider all evidence admitted at the guilt or innocence stage and the punishment stage, including evidence of the defendant's background or character or the circumstances of the offense that *militates for or mitigates against* the imposition of the death penalty.

(Emphasis added.) The jury, therefore, is to consider all evidence admitted during both stages of the trial. And, veniremembers who would *automatically* vote for or against the death penalty at the end of the guilt stage are challengeable for cause. *See, Morgan,* 504 U.S. 719, 112 S.Ct. 2222, 119 L.Ed.2d 492; and, *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).

The jury can, however, view the evidence introduced during the trial as mitigating, aggravating or neither. Once admitted, the jury may give the evidence any amount of weight they feel would be appropriate. *Cordova v. State,* 733 S.W.2d 175, 189 (Tex.Cr.App.1987) (citing *Adams v. Texas,* 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980)); *see also, Johnson v. State,* 773 S.W.2d 322, 331 (Tex.Cr.App.1989). In other words, the evidence does not come with any predetermined weight. *Cuevas v. State,* 742 S.W.2d 331, 346 (Tex.Cr.App.1987). And neither side is entitled to a commitment from a juror as to how he or she will ultimately regard the evidence. If jurors are committed prior to trial as to how they would consider certain evidence, then the case is, in essence, being tried at the voir dire stage and the panel would no longer be impartial. *Bailey v. State,* 838 S.W.2d 919 (Tex.App.—Fort Worth 1993, writ ref'd) (citing *Cadoree v. State,* 810 S.W.2d 786, 789 (Tex.App.—Houston 1991, pet. ref'd)).

### i.

While jurors are free to give any amount of weight to a particular piece of evidence, refusal to consider all relevant evidence disqualifies the juror under the law. *See,* art. 35.16; and, *Morgan,* 504 U.S. at 738, 112 S.Ct. at 2234. However, it is insufficient to

only ask veniremembers if they are law-abiding citizens, whether they would be able to follow the law as instructed, or if they would be able to listen to all evidence with an open mind. Such questions invite an affirmative answer. Few veniremembers will declare in open court that they refuse to follow the law or are narrow-minded by nature or circumstance. Therefore, further probing is necessary to remove veniremembers who will not be able to evaluate all the evidence.

In order to place voir dire examination in context, both sides must be able to ask whether veniremembers will be able to consider certain types of evidence during the sentencing phase of the trial, regardless of whether they eventually consider the evidence as mitigating, aggravating or neither. For example, the defendant is entitled to ask veniremembers whether they will be able to consider evidence such as youth, voluntary intoxication, family background and any other evidence that may be introduced during sentencing, regardless of what weight they decide to give it. The mere mention of youth, voluntary intoxication, or family background evidence, without more, does not commit the veniremember. The State, similarly, may question veniremembers about types of evidence it may want to introduce during the sentencing stage for the sole purpose of determining if veniremembers will consider them; i.e., intent, planning, prior criminal history, or even voluntary intoxication.

### ii.

Moreover, for both sides to intelligently exercise their peremptory strikes, they must be allowed to ask prospective jurors whether they would consider a particular type of evidence as mitigating or aggravating. Such questions allow counsel to more effectively utilize voir dire to discover potential bias and prejudice. As Judge Miller noted in *Maddux, supra*, questioning during voir dire should be broad enough that resorting to

reflexive decisions based on gut instincts or generalized bias in exercising peremptory strikes is ameliorated. 862 S.W.2d at 598 (Miller, J., concurring). Asking whether veniremembers can consider certain types of evidence in mitigation or in aggravation is not committal *per se*. Veniremembers are not (and should not be) asked whether they will consider that type of evidence as mitigating or aggravating in the case at hand. Rather, veniremembers are being asked whether they could find a particular type of evidence in mitigation or in aggravation, in a proper case. However, it should be made clear to the veniremembers that they are not being asked to assess the weight to be given to a particular piece of evidence in the case at hand.

### D.

While generic examples of aggravating or mitigating evidence may be given during voir dire, neither side can preview the details of the evidence to be introduced at trial; questions peculiar to the case are prohibited. For the defense, this means details such as the defendant's actual age, family history and background should not be alluded to during voir dire to test veniremembers' reactions. For example, the defendant may not ask whether veniremembers will be able to consider the defendant's particular background during sentencing; e.g., the fact the defendant was only a certain age when he committed the crime, has a particular IQ, was sexually abused as a child or became dependent on drugs at an early age. *See also, Coleman v. State*, 881 S.W.2d 344, 351 (Tex.Cr.App. 1994); (defendant's good conduct in jail); *Trevino*, 815 S.W.2d at 621–622 (defendant was an average student and a good worker); *Johnson*, 773 S.W.2d at 331 (19–year–old defendant with the maturity of a 12–year–old); and, *Cuevas*, 742 S.W.2d at 345 (defendant had an IQ of 70 and little education).[1]

---

1. It should be noted that such detailed questions are prohibited even if parties preface the questions by using the phrase "in a proper case," or "in a hypothetical situation." For example, counsel may not ask "in a hypothetical case, where a person was only nineteen at the time of

the crime, became dependent on drugs at an even earlier age, had little education, was severely abused as a child" and so on and so on, "would you consider those factors as mitigating in determining the appropriate punishment?"

Similarly, the State cannot preview the details of its case. For example, it would be inappropriate for the State to ask veniremembers whether they would be able to consider certain evidence of the crime during sentencing; i.e., defendant had, for years, planned to kill his wife, took out life insurance on his wife, designating himself as the beneficiary, and his wife was shot at point blank range, etc. *See also, White,* 629 S.W.2d at 706 (defendant went into a store, attempted to rob or robbed it, aimed a pistol at the victim's head at short range and shot her). In short, whether a question is committal depends on the type and amount of details placed in the question.

The manner in which the question is phrased is also important. Under certain circumstances, it may become obvious parties are trying to commit the veniremembers about how they will take certain types of evidence. For instance, "can you consider a person's family background as a mitigating factor," followed by "if a person was horribly abused as a child, you would not consider that as a point in their favor, as far as not imposing the death penalty," followed perhaps by other questions regarding the same issue would be improper even though the first question by itself is a proper question. Sometimes it can be a fine line, but, as Judge Campbell noted in *Maddux, supra,* a bright line rule for determining when a question constitutes committal is difficult due to the nature of the issues involved. 862 S.W.2d at 600.

### E.

In his Motion to Permit Voir Dire of Prospective Jurors on Mitigating Evidence, appellant sought to ask prospective jurors whether they would[2] be willing to consider *appellant's particular background* (i.e., 22

years old at the time of the crime, was voluntarily intoxicated on drugs at the time of the crime, has exhibited positive character traits, etc.) in mitigation of punishment. While jurors have to be able to consider[3] all evidence admitted during any stage of trial, veniremembers should not be asked to form an opinion regarding specific evidence before the trial has begun. The determination of weight is to be made during the sentencing phase by the jury, not by the parties during voir dire. What is mitigating in one person's mind may be aggravating to another, or the jurors may decide the evidence is neither mitigating nor aggravating. As we stated in *White,* a party cannot preview the details of its case to test the jury's reaction. 629 S.W.2d at 706.

Appellant misconstrues the Supreme Court's decision in *Morgan v. Illinois.* In *Morgan,* a defendant's right to an impartial jury includes the right to ask veniremembers whether they would "automatically vote to impose the death penalty no matter what the facts are."[4] 504 U.S. at 739, 112 S.Ct. at 2235. This means jurors must be able to consider all evidence to be introduced, including evidence introduced for mitigation, and determine then whether or not to impose the death penalty. But, jurors are not required to view certain types of evidence in mitigation of punishment, or in any particular manner. *Robertson v. State,* 871 S.W.2d 701, 712 (Tex.Cr.App.1993).

Appellant, however, was prohibited from asking certain proper questions. During voir dire, appellant attempted to ask individual venire members more generally whether they would be willing to consider various types of mitigating evidence (i.e., youth, intoxication, family background, etc.) as a mitigating factor. While appellant was able to ask some of the questions, others were objected to and sustained.[5] Some of the ques-

---

**2.** Just as the words "consider," "could," and "can," the words "would," and "will" evince no magical quality and are neither committal or non-committal words by their mere utterance.

**3.** As stated earlier, the word "consider" is not a committal word in and of itself. Neither is it a non-committal word. Rather, one has to see what the venire is being asked to consider.

**4.** This is commonly referred to as a reverse-*Witherspoon* question. The Supreme Court decided in *Witherspoon v. Illinois* jurors should not be committed before trial to vote against the death penalty regardless of the facts and circumstances of the case. 391 U.S. 510, 522, 88 S.Ct. 1770, 1777, n. 21, 20 L.Ed.2d 776 (1968).

**5.** There was apparently some confusion as to what appellant was permitted to ask. Appellant was seemingly under the impression he was

tions objected to and sustained were clearly proper. For example, the question "could you consider alcohol as a mitigating circumstance" is not in itself committal and should have been allowed.

In the instant case, however, there is no reversible error because either: (1) the error was cured when the veniremember was successfully challenged for another reason; *Jones v. State*, 843 S.W.2d 487, 496 (Tex.Cr. App.1992); (2) a proper question was asked, objected to and sustained, but appellant was able to ask essentially the same question later; *Etheridge v. State*, 903 S.W.2d 1, 9 (Tex.Cr.App.1994); *Wheatfall v. State*, 882 S.W.2d 829, 844 (Tex.Cr.App.1994) (Baird, J., concurring); or (3) the question was improper. *Atkins v. State*, 951 S.W.2d 787, 789 (Tex.Cr.App.1997). **With these comments, I concur in the disposition of point of error number one.**

## II.

Points of error seven, eight and nine contend appellant should have been permitted to voir dire the venire regarding the applicability of parole in capital cases. Specifically, appellant alleges that denying jurors the knowledge of appellant's 35 year minimum incarceration, if sentenced to life in prison, resulted in the arbitrary imposition of the death penalty in violation of his due process rights.

As stated by the majority, this matter has been settled adversely to appellant. *Ante*, at 6, citing *Smith v. State*, 898 S.W.2d 838 (Tex.Cr.App. 1995); *Willingham v. State*, 897 S.W.2d 351 (Tex.Cr.App. 1995); *Broxton v. State*, 909 S.W.2d 912 (Tex.Cr.App. 1995); *Sonnier v. State*, 913 S.W.2d 511 (Tex.Cr. App. 1995); and *Lawton v. State*, 913 S.W.2d 542 (Tex.Cr.App.1995). Under our law,

whether a capital defendant may bring truthful information regarding parole eligibility to the venire is discretionary with the trial judge. *Santellan v. State*, 939 S.W.2d 155, 171 (Tex.Cr.App.1997), citing *Ford v. State*, 919 S.W.2d 107, 116 (Tex.Cr.App.1996); *and*, *Walbey v. State*, 926 S.W.2d 307, 313, n. 8 (Tex.Cr.App.1996) ("Texas trial judges have the discretion to instruct capital juries on the issue of parole and may find such instruction an effective means of charging the jury on the law applicable to the case." citing Tex. Code Crim. Proc. Ann. art. 3.14).

The majority states: "Appellant has given us no reason to revisit our analysis in these cases...." *Ante*, at 6. Appellant's brief was filed on August 11, 1995. Therefore, appellant was not in a position to bring to our attention the case of *Brown v. Texas*, —— U.S. ——, 118 S.Ct. 355, 139 L.Ed.2d 276 (1997), which called our precedent into question. Although the *Brown* Court denied certiorari, four justices joined a concurring opinion and stated: "The Texas rule unquestionably tips the scales in favor of a death sentence that a fully informed jury might not impose." *Id.*, at ——, 118 S.Ct. at 356

The concurring justices recognized "an obvious tension" between the basic holding of *Simmons v. South Carolina* and the Texas rule of not allowing defendants to inform juries of exactly what a "life" sentence entails. *Brown*, —— U.S. at ——, 118 S.Ct. at 356.[6] In *Simmons*, the Supreme Court held "that where the defendant's future dangerousness is at issue, and state law prohibits the defendant's release on parole, due process requires that the sentencing jury be informed that the defendant is parole ineligible." *Simmons v. South Carolina*, 512 U.S. 154, 161, 114 S.Ct. 2187, 2192–2193, 129 L.Ed.2d 133 (1994). The Court held:

---

prohibited from asking about certain types of evidence; i.e., youth, family background, intoxication, etc. Appellant did not seem to understand the prohibition was on the weight he proposed to associate with the evidence, not the subject matter. Nonetheless, appellant made clear that, if permitted, his intention was to question each prospective juror along the lines delineated in his Motion to Permit Voir Dire of Prospective Jurors on Mitigating Evidence. As we stated earlier, however, the questions proposed in appellant's motion are improper.

6. Currently Tex.Code Crim. Proc. Ann. art. 42.18, § 8(b) provides that a prisoner serving a life sentence for a capital crime is not eligible for release on parole until the actual calendar time the prisoner has served, without consideration of good conduct time, equals 40 calendar years. Petitioner was convicted under a prior version of the law where a life sentence was 35 years before parole eligibility.

The Due Process Clause does not allow the execution of a person "on the basis of information which he had no opportunity to deny or explain." *Gardner v. Florida,* 430 U.S., at 362, 97 S.Ct., at 1207. In this case, the jury reasonably may have believed that petitioner could be released on parole if he were not executed. To the extent this misunderstanding pervaded the jury's deliberations, it had the effect of creating a false choice between sentencing petitioner to death and sentencing him to a limited period of incarceration.

*Ibid.* The Court determined the State denied Simmons due process by "securing a death sentence on the ground, at least in part, of petitioner's future dangerousness, while at the same time concealing from the jury the true meaning of its noncapital sentencing alternative...." *Id.,* 512 U.S. at 162, 114 S.Ct. at 2193.

The *Simmons* holding rested upon due process wherein the State argued future dangerousness and the defendant was not allowed to rebut the same:

> ... The trial court's refusal to apprise the jury of information so crucial to its sentencing determination, particularly when the prosecution alluded to the defendant's future dangerousness in its argument to the jury, cannot be reconciled with our well-established precedents interpreting the Due Process Clause.

*Simmons,* 512 U.S., at 164, 114 S.Ct., at 2194.

The *Simmons* Court relied on *Skipper v. South Carolina,* 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986), and *Gardner v. Florida,* 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977), in determining the due process violation. In *Skipper,* the Court held "the defendant was denied due process by the refusal of the state trial court to admit evidence of the defendant's good behavior in prison in the penalty phase of his capital trial." *Simmons,* 512 U.S. at 164, 114 S.Ct. at 2194. As

the Court determined "where the prosecution relies on a prediction of future dangerousness in requesting the death penalty, elemental due process principles operate to require admission of the defendant's relevant evidence in rebuttal." *Ibid.,* (citing *Skipper v. South Carolina,* 476 U.S. at 5, n. 1, 106 S.Ct. at 1671, n. 1). In *Gardner,* the Court held that sending a man to his death "on the basis of information which he had no opportunity to deny or explain" violated fundamental notions of due process. *Gardner,* 430 U.S. at 362, 97 S.Ct. at 1207.

Appellant requested an instruction regarding the mandatory 35 years he would have been required to serve before becoming parole eligible. In at least five separate instances, the State argued appellant should be sentenced to death because he would be a future danger to society. Without being able to rebut that claim with valid, truthful information about what a life sentence really meant, appellant's right to due process was violated. At least four members of the Supreme Court think Texas law "[p]erversely ... prohibits the judge from letting the jury know when the defendant will become eligible for parole if he is not sentenced to death." *Brown,* at ——, 118 S.Ct. at 356.

The majority does not mention the *Brown* concurrence. Perhaps because they question whether that opinion has any precedential value.[7] This is, in fact, a good question. What were the concurring justices thinking? I see two possible thoughts: (a) because federal precedent is clearly against Texas precedent, there is no need to grant certiorari as the lower federal courts have all the authority necessary to resolve these claims on federal habeas; or, (b) we four believe this issue was resolved in *Simmons,* but rather than grant certiorari and run the risk of being proven wrong, for the time being we will leave resolution of the issue to the lower federal courts.[8]

---

7. The denial of a writ of certiorari imports no expression of opinion upon the merits of the case, and opinions accompanying the denial of certiorari do not have the same effect as decisions on the merits. *Teague v. Lane,* 489 U.S. 288, 296, 109 S.Ct. 1060, 1067, 103 L.Ed.2d 334 (1989).

8. This interpretation is premised upon the "rule of four." Kermit L. Hall, ed., THE OXFORD COMPANION TO THE SUPREME COURT OF THE UNITED STATES, pg. 133 (1992).

Nevertheless, whether we regard the *Brown* concurrence as a warning or merely advisory, clearly a message has been sent and we ignore it at our own peril. Therefore, before myriads of our capital cases are either reversed in the federal habeas system or remanded to this Court in light of future Supreme Court precedent, we should require that all capital veniremembers be informed of the actual length of incarceration a capital defendant must serve before being eligible for release on parole.

Therefore, I would take this opportunity to hold that so long as a death sentence is secured, at least in part, on the defendant's future dangerousness, due process commands that capital juries be provided with accurate and truthful information regarding a defendant's parole eligibility. Because the majority does not seize this opportunity, I dissent to the resolution of points of error seven, eight and nine.

OVERSTREET, Judge, concurring and dissenting.

I dissent to the majority's holding on points seven, eight, and nine, which complain about the trial court's refusal to inform jurors, or allow appellant to inform prospective jurors, that he would have to serve 35 calendar years before becoming eligible for parole on a life sentence for capital murder.

I continue to dissent to the majority's treatment of this issue. *See, e.g., Smith v. State,* 898 S.W.2d 838 (Tex.Cr.App.1995)(plurality opinion), *cert. denied,* 516 U.S. 843, 116 S.Ct. 131, 133 L.Ed.2d 80 (1995); *Morris v. State,* 940 S.W.2d 610 (Tex.Cr.App.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 2461, 138 L.Ed.2d 218 (1997). As I discussed in some detail in my dissent to *Rhoades v. State,* 934 S.W.2d 113, 131–44 (Tex.Cr.App. 1996), in light of the United States Supreme Court's holding in *Simmons v. South Carolina,* 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994), I believe that the United States Constitution's guarantees of due process required appellant's jury be informed of the 35–year parole eligibility law.

I also note that four members of the United States Supreme Court have recently commented upon the "[p]erverse[ness]" of our death penalty scheme not letting the jury know when the defendant will become eligible for parole if he is not sentenced to death. *Brown v. Texas,* —— U.S. ——, 118 S.Ct. 355, 139 L.Ed.2d 276 (1997). I likewise find rather perverse this Court's continued approval of keeping jurors ignorant and uninformed of such a critical legal fact when making life and death decisions as to whether the death penalty will be assessed. Capital jurors deserve to be so informed so that they can make an informed decision. Hopefully a majority of this Court will soon realize this; before the Supreme Court explicitly informs us via a myriad of our opinions being reversed.

I respectfully dissent to the majority's discussion and holding as to points seven, eight, and nine. Otherwise, I concur in the disposition of all the other points.

PRICE, J., joins as to points 7, 8, and 9.