IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






No. AP-74,493





KEITH STEVEN THURMOND, Appellant



v.



THE STATE OF TEXAS





ON DIRECT APPEAL


FROM MONTGOMERY COUNTY





 Johnson, J., delivered the opinion of the Court, in which Meyers, Price,
Womack, Keasler, Holcomb, and Cochran, JJ. joined. Keller, P.J. and Hervey, J.,
concurred in the judgment.


O P I N I O N



 In November 2002, a jury convicted appellant of capital murder. Tex. Penal Code §
19.03(a). Pursuant to the jury's answers to the special issues set forth in Texas Code of Criminal
Procedure Article 37.071, §§ 2(b) and 2(e), the trial court sentenced appellant to death. Art. 37.071,
§ 2(g). (1) Direct appeal to this Court is automatic. Art. 37.071, § 2(h). Appellant raises thirteen points
of error alleging issues involving voir dire, chain of custody, and the constitutionality of the Texas
death-penalty statute. We affirm.

VOIR DIRE


 In his first point of error, appellant argues that he was denied a fair and impartial trial because
the trial court abused its authority in deferring to the prosecution regarding appellant's request for
an additional peremptory strike. The record reflects that appellant's counsel used his last peremptory
challenge on venire member Snyder. Appellant later challenged venire member Crow for cause. 
The trial court denied appellant's challenge for cause and the following exchange occurred:

[DEFENSE COUNSEL]: Judge, we ask for an extra - - we've had two other jurors
or three other jurors, I think, that we've asked - - we had to use perempts on, where
we made challenges for cause, they were denied. We'd ask for three additional
peremptory challenges.


THE COURT: You're asking for three additional.


[DEFENSE COUNSEL]: Well, on that basis; but, you know, we're asking for an
additional peremptory challenge.


THE COURT: What says the State?


[PROSECUTOR]: Well, Your Honor, we're opposed - - I have made - - to granting
any additional. We've looked back through, or I've looked back through at the
reason that those challenges were denied and we're satisfied that those were the
correct and accurate rulings. I've got some notes on them, brief notes on them, but --


THE COURT: Well, let's look. Mary Vick.


[PROSECUTOR]: Sondra Faul.


THE COURT: Tell me - - remind me who Mary Vick was.


[PROSECUTOR]: She was - - well, I wrote - - this is just my notes, Your Honor. 
Challenge was for - - she would give death penalty for murder, but I think the Court's
ruling indicates she could follow the law. And she indicated she could follow the
law.


THE COURT: Sondra Faul?


[PROSECUTOR]: Sondra Faul was basically the same thing. There was a challenge
made, death penalty for murder, but she could listen to the circumstances and follow
the law to the instructions.


THE COURT: Willtrout, I think?


[PROSECUTOR]: I'm not sure about that. Next one I had was way down on
Susanne Byrne-Heeth.


THE COURT: I had Willtrout, but I've got some notes on that. And Byrne-Heeth
is what?


[PROSECUTOR]: My notes are - -


THE COURT: Right, right.


[PROSECUTOR]: Couldn't consider certain crimes as criminal acts of violence.


THE COURT: Right. That was the one that Defense made a motion that really was
State's motion to make. And then Crow is the one now. You don't have any notes
on Willtrout?


[DEFENSE COUNSEL]: We also challenged Deane Moore on the basis of his
physical ability to understand what we were talking about. He was the coach from
the elementary school.


THE COURT: You did. You did make that challenge. You know, I don't care. We
could go on forever. How comfortable is the State? It really doesn't matter to me. 
I think the rulings that I made are really safe, safe, safe, safe. I have no concern about
it at all; but it's the State's case and I don't mind trying it four or five times, but I'll
leave it in your hands. If you think the Court needs to give an extra one, I'll give an
extra one.


[PROSECUTOR]: No, Your Honor. I'm very comfortable with the rulings.


THE COURT: Okay. That will be denied then.


[DEFENSE COUNSEL]: Okay. We've exhausted all our peremptory challenges,
Judge. We would have used a peremptory challenge on this juror, and we're being
forced to accept her and she's unacceptable to us.


 The record reflects that appellant used peremptory challenges after the trial court denied his
challenges for cause to venire members Mary Vick, Sondra Faul, Deane Moore, Jeffrey Budde, and
Susanne Byrne-Heeth. Appellant peremptorily challenged Cindy Willtrout, but did not challenge
her for cause. Appellant does not discuss any of these venire members in his brief on appeal. He
states that he "preserved the error during his challenge on Juror Crow" and that "[t]he error
complained of here affected the entire trial as Juror Crow was the twelfth seated [juror] and
participated in the verdicts for guilty and death," but provides no further argument. To the extent
that appellant may be arguing that the trial court erroneously denied his challenges for cause to Crow
or any of the other venire members, his argument is inadequately briefed and we decline to address
it. TEX. R. APP. P. 38.1.

 "It is clearly within the discretion of the trial court to grant additional peremptory challenges
upon exhaustion of the statutory number of strikes." Cooks v. State, 844 S.W.2d 697, 717 (Tex.
Crim. App. 1992), cert. denied, 509 U.S. 927 (1993). Appellant asserts that the trial court abused
its discretion by "deferring to the prosecution" on the issue of whether or not to grant appellant
additional peremptory challenges. He complains that "the trial court's unreasonable and most
unusual deference to the state regarding [his] request for additional strikes deprived him of a fair
trial." 

 It appears from the trial court's comments on the record that it felt comfortable refusing
appellant's request for additional peremptory challenges because it was satisfied with its previous
rulings, and that it was prepared to deny additional peremptory challenges on that basis unless the
prosecutor believed otherwise. While it is probably not a good idea to even appear to be soliciting
the opinion of a party as to the correctness of a ruling, we discern no abuse of discretion in the trial
court's decision to deny appellant additional peremptory challenges. (2) Point of error one is overruled.

CHAIN OF CUSTODY

 In points of error three and four, appellant argues that the trial court improperly permitted
testimony regarding DNA evidence when the state failed to establish an unbroken chain of custody
for a blood sample that was used in DNA testing.

 Appellant was charged with murdering Sharon Ann Thurmond and Guy Sean Fernandes in
the same criminal transaction. State's Exhibit 26-B was a blood sample taken from Fernandes
during his autopsy and placed on a "bloodstain card." Javier Flores, a forensic DNA analyst for the
Texas Department of Public Safety laboratory, performed a DNA comparison of that blood sample
and a blood sample collected from the outside of the barrel of the gun that was used to commit the
murders. Flores testified that the DNA profile of the blood sample obtained from the gun was
consistent with the blood sample taken from Fernandes.

 Assistant Harris County medical examiner Dr. Stephen Wilson testified regarding Fernandes'
autopsy and the preparation of his DNA samples:

 The routine procedure that we perform is the following: In obtaining
specimens of either body tissues or body fluids, those - - those body fluids or body
tissues are removed either by me or the person assisting me at the autopsy.


 At the time the autopsy is performed, they are placed in some sort of
specimen container; either a jar, a vial, or a test tube. They are sealed. They are
labeled.


 The labeled specimens are placed inside a plastic bag. They are sealed by me. 
They are - - from that point on, I did make a record of the specimens I obtained. The
specimens are then placed by me personally into a locked chamber room, and I sign
a piece of paper indicating that I placed those specimens there. And from that point,
the toxicology staff picks up the specimens and again signs on for the proper chain
of evidence.


 * * *


Q. Okay. Did you perform autopsies on the bodies of Key - - or excuse me - - Guy
Fernandes and Sharon Thurmond on or about, let's say, the 26th of September?


A. I did, yes.


Q. Did you personally collect the DNA samples from those people?


A. I did indeed.


Q. Okay, sir. An assistant did not do it for you?


A. It's possible that - - it would be some of the specimens might have been taken by
the assistant, so it depends on which specimens you are referring to. But if the
specimens are taken by the assistant, they are doing it while I am standing right
beside him assisting him, taking the specimen.


Q. Okay. I'm specifically mentioning the vials of blood that would have been
collected from the bodies of the deceased.


A. Okay. Those may or may not have been taken by me directly. If they weren't
taken by me directly, they were taken by the assistant and I was there right at the
scene with him, either holding up the specimen so he could obtain it or was standing
right next to him.


Q. Okay. What type of education do these assistants have?


A. Most of them have at least a high school education. Some have additional
training in performing autopsies.


Q. Okay. Now, do you remember specifically in these cases seeing the - - watching
the assistant take the samples or are you just assuming?


A. That is a standard procedure in all procedures. Those specimens never would be
taken without me being present.


 Appellant essentially argues that there was a break in the chain of custody because it was
unclear whether Wilson or his assistant took a blood sample from Fernandes. This alone does not
render the evidence inadmissible. Wilson testified that, even if his assistant took the sample, he
would have done so under Wilson's on-the-scene supervision. Without evidence of tampering, most
questions concerning care and custody of evidence go to the weight, not the admissibility, of the
evidence. See Lagrone v. State, 942 S.W.2d 602, 617 (Tex. Crim. App.), cert. denied, 522 U.S. 917
(1997). Appellant, while complaining about Dr. Wilson's uncertainty regarding whether he himself
or the unnamed assistant took the blood sample, makes no claim of tampering. Thus, his complaints
go to the weight, not the admissibility, of the evidence. The trial court did not abuse its discretion
in admitting the evidence. Points of error three and four are overruled.The Texas Death Penalty Statute

 In his second point of error, appellant complains about the trial court's denial of his "motion
to exclude the death penalty as possible punishment." In this motion, appellant challenged, in part, 
the constitutionality of the state's discretion to seek the death penalty. He argues on appeal that the
Texas death-penalty statute woefully fails to provide a standardized method for determining death
worthiness, i.e. in which cases the death penalty will be sought. He contends that "[t]his failure
eliminates rationality and consistency in the decision to seek death and thus violates the Accused's
right to due process" under the Fourteenth Amendment to the United States Constitution and Article
I, § 19, of the Texas Constitution.

 The state has discretion to seek the death penalty, and this prosecutorial discretion is
constitutional. Hankins v. State, 132 S.W.3d 380, 387 (Tex. Crim. App.), cert. denied, ___ U.S. ___
(2004). We have specifically rejected the claim that this discretion violates the Eighth and
Fourteenth Amendments. Id.; Ladd v. State, 3 S.W.3d 547, 574 (Tex. Crim. App. 1999), cert.
denied, 529 U.S. 1070 (2000). Appellant does not provide separate authority or argument for his
Texas constitutional claim; thus, we decline to address it. Heitman v. State, 815 S.W.2d 681, 690-91
n. 23 (Tex. Crim. App. 1991). Point of error two is overruled.

 In his fifth point of error, appellant complains that the future-dangerousness special issue is
unconstitutional because the "aggravating factors" are vague and undefined. It is well settled that
the terms "probability," "criminal acts of violence," and "continuing threat to society" need not be
defined in the jury charge. Chamberlain v. State, 998 S.W.3d 230, 237-8 (Tex. Crim. App. 1999),
cert. denied, 528 U.S. 1082 (2000); Ladd, 3 S.W.3d at 572-3. Point of error five is overruled.

 In his sixth point of error, appellant claims that the Texas death-penalty statute is
unconstitutional because it is "open-ended and unstructured" and does not provide for meaningful
appellate review of the special issues. We have previously addressed and rejected these claims. 
Valle v. State, 109 S.W.3d 500, 502-04 (Tex. Crim. App. 2003); Ladd, 3 S.W.3d at 573. We have
also rejected appellant's argument that the Due Process Clause requires this Court to engage in a
proportionality review in death-penalty cases. King v. State, 953 S.W.2d 266, 273 (Tex. Crim. App.
1997). Point of error six is overruled.

 In his seventh point of error, appellant asserts that the Texas death-penalty statute is
unconstitutional because it fails to assign a burden of proof to the mitigation special issue. We have
previously held that the absence of an explicit assignment of the burden of proof does not render
Article 37.071 unconstitutional. Raby v. State, 970 S.W.2d 1, 8-9 (Tex. Crim. App.), cert. denied,
525 U.S. 1003 (1998); Point of error seven is overruled.

 In his eighth point of error, appellant contends that the "10-12 rule," requiring at least ten
"no" votes for the jury to return a negative answer to the future dangerousness special issue and at
least ten "yes" votes to return an affirmative answer to the mitigation issue, violates the
constitutional principles discussed in Mills v. Maryland, 486 U.S. 367 (1988), and McKoy v. North
Carolina, 494 U.S. 433 (1990). We have previously resolved these claims adversely to appellant. 
Prystash v. State, 3 S.W.3d 522, 536-37 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1102 (2000);
Williams v. State, 937 S.W.2d 479, 490, 492 (Tex. Crim. App. 1996). Point of error eight is
overruled.

 In point of error nine, appellant argues that the Texas death-penalty statute is unconstitutional
because it fails to inform the jury that a single holdout juror on any special issue would result in an
automatic life sentence. We have repeatedly addressed and rejected this contention. Brooks v. State,
990 S.W.2d 278, 288 (Tex. Crim. App.), cert. denied, 528 U.S. 956 (1999); Pondexter v. State, 942
S.W.2d 577, 586 (Tex. Crim. App. 1996), cert. denied, 522 U.S. 825 (1997). Point of error nine is
overruled.

 In point of error ten, appellant argues that the Texas death-penalty statute is unconstitutional
because it gives the jury the "open-ended, unstructured discretion" that the United States Supreme
Court condemned in Furman v. Georgia, 408 U.S. 238 (1972). We have previously rejected this
argument. Holberg v. State, 38 S.W.3d 137, 141 (Tex. Crim. App. 2000), cert. denied, 534 U.S. 972
(2001); Ladd, 3 S.W.3d at 574. Point of error ten is overruled. 

 In point of error eleven, (3) appellant contends that "the trial court erred when it did not include
a definition of mitigation in its charge." The jury instructions included the statutory definition of
"mitigating evidence" set out in Article 37.071, § 2(f)(4). Specifically, the punishment jury charge
included an instruction to jurors in deliberating on the answer to the second special issue; "In
arriving at your answer, you shall consider mitigating evidence to be evidence that a juror might
regard as reducing the defendant's moral blameworthiness." Appellant complains that "the statute's
separate definition of 'mitigating evidence' limits jurors's consideration of such evidence to those
mitigating factors that specifically implicate the defendant's moral blameworthiness." We have
previously upheld the constitutionality of the statutory definition. Ladd, 3 S.W.3d at 574; King, 953
S.W.2d at 274. Point of error eleven is overruled.

 In point of error twelve, appellant asserts that the death penalty, as presently administered
in Texas, is cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments
to the United States Constitution, citing Justice Blackmun's dissenting opinion in Callins v. Collins,
510 U.S. 1141 (1994). In point of error thirteen, appellant argues that the Texas death-penalty 
statute violates the ban on cruel or unusual punishment in Article I, § 13 of the Texas Constitution. 
We have rejected these arguments in previous cases. Chamberlain, 998 S.W.2d at 238; Howard v.
State, 941 S.W.2d 102, 118-19 (Tex. Crim. App. 1996), cert. denied, 535 U.S. 1065 (2002); Morris
v. State, 940 S.W.2d 610, 616 (Tex. Crim. App. 1996), cert. denied, 520 U.S. 1278 (1997). Points
of error twelve and thirteen are overruled.


 We affirm the judgment of the trial court.


 Johnson, J.

Delivered: November 17, 2004

En banc

Do Not Publish
1. Unless otherwise indicated, all references to Articles refer to the Texas Code of Criminal Procedure.
2. 
3. We observe that the separate claims made in points eleven, twelve, and thirteen are renumbered from
appellant's table of contents; however, the claims remain the same but under a different number. We address them
as they are numbered in the body of appellant's brief.